Janet M. MANNING, on behalf of herself and all others similarly situated

v.

PRINCETON CONSUMER DISCOUNT COMPANY, INC., on behalf of itself and all others similarly situated, and Springfield Dodge, Inc., on behalf of itself and all others similarly situated.

Civ. A. No. 74–875.

United States District Court, E. D. Pennsylvania.

May 30, 1975.

See also, D.C., 380 F.Supp. 116.

---

---

David A. Scholl, Richard S. Packel, Delaware County Legal Assistance Assn., Inc., Chester, Pa., for plaintiff.

Alan C. Gershenson, Philadelphia, Pa., for Princeton Consumer.

John J. Robinson, Upper Darby, Pa., for Springfield Dodge.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

On January 31, 1975, this Court certified the plaintiff, Janet Manning, as the representative, under Federal Rule 23(b)(2), of a class of all those who have been, or will be, denied their rights under 15 U.S.C. § 1638 (the "Truth-in-Lending Act") by defendant Springfield Dodge. This Court then entered summary judgment on behalf of plaintiff and her class, and at the same time entered summary judgment on behalf of defendant Princeton Consumer Discount Company against plaintiff and her class. The Court also entered summary judgment in favor of Princeton and against plaintiff on plaintiff's reformation claim. 390 F.Supp. 320. Soon after the January 31, 1975 Order was entered, the parties brought to the Court's attention the fact that the Court had scheduled oral argument upon these motions and that oral argument had never been held. In order to eliminate any prejudice which might have resulted from this oversight, the Court allowed the parties against whom judgment had been entered a period of time in which to present to the Court, in the form of motions for reconsideration, any arguments or evidence which they had reserved for oral argument. Defendant Springfield Dodge has availed itself of the time period provided by the Court; plaintiff Manning filed a motion for reconsideration within the shorter time period provided by Federal Rule 59(e), which entitles it to raise matters other than those that may have been reserved for oral argument. It is these motions for reconsideration, and the reply of defendant Princeton to them, which are dealt with in this memorandum.

Briefly, these are the facts upon which the Court entered summary judgment in the January 31, 1975 Order. On March 20, 1974, plaintiff agreed to purchase an automobile from Defendant Springfield Dodge. Plaintiff made a downpayment of $300.00, and it was agreed that Springfield would obtain financing for the balance. In order to do this, a Springfield employee obtained information from plaintiff concerning her income, assets, and expenses.

Approximately one week later plaintiff was instructed to return to Springfield Dodge, from where she was driven by a Springfield employee to the offices of defendant Princeton Consumer Discount Company. Plaintiff had never done business with, nor heard of, Princeton prior to this time. When plaintiff arrived at Princeton, the contract documents concerning a loan to her in the amount of the unpaid balance on the car were already prepared. Plaintiff had already been informed of the terms of the loan contract by a Springfield officer prior to her trip to Princeton. After she signed the contract, the Princeton

employee gave directly to the Springfield salesman a check made out to the plaintiff and to Springfield Dodge for $1,191.00 and gave to the plaintiff a check made out to her for $11.84. The salesman then drove plaintiff back to Springfield Dodge, where they picked up the automobile. He directed her to endorse the check for $1,191.00 over to Springfield, which she did.

Defendants' answers to plaintiff's interrogatories revealed that Princeton paid Springfield a 5% referral fee on the transaction involving plaintiff as well as on another 14 transactions between June, 1973 and June, 1974 involving cars sold by Springfield and financed by Princeton.

We found that these undisputed facts established that defendant Springfield Dodge arranged for the extension of credit to plaintiff, thereby making the sale of the car to plaintiff a "credit sale" within the meaning of § 2(g) of the Truth-in-Lending Act, 15 U.S.C. § 1602(g) [1], and regulation Z [2] promulgated thereunder. Since plaintiff's transaction was a credit sale, she was entitled to more disclosures [3] than she had received on the "consumer loan transaction" form which she received from Princeton when she entered into the loan agreement with Princeton. The question which was then before the Court, and which has been raised anew by the motions for reconsideration, is which defendant, Springfield Dodge or Princeton, or both, was required by the Truth-in-Lending Act to provide her with these disclosures? We concluded that only defendant Springfield Dodge, the party who had arranged for the extension of credit and thus brought the transaction within the purview of the credit sale section, was required to make the credit sale disclosures. This conclusion was based partly on a published advisory letter [4] on regulation Z written by the Director of the Federal Reserve Board and partly on our view that little would be gained by requiring identical disclosures to the same buyer.

Plaintiff makes several arguments in support of the proposition that

---

1. § 2(g) of the Truth-in-Lending Act reads as follows:

"The term 'credit sale' refers to any sale with respect to which credit is extended or arranged by the seller. The term includes any contract in the form of a bailment or lease if the bailee or lessee contracts to pay as compensation for use a sum substantially equivalent to or in the excess of the aggregate value of the property and services involved and it is agreed that the bailee or lessee will become, or for no other or a nominal consideration has the option to become, the owner of the property upon full compliance with his obligations under the contract."

2. In regulation Z is found a definition of the phrase "arrange for the extension of credit", 12 C.F.R. § 226.2(f):

" 'arrange for the extension of credit' means to provide or offer to provide consumer credit which is or will be extended by another person under a business or other relationship pursuant to which the person arranging such credit receives or will receive a fee, compensation, or other consideration for such service or has knowledge of the credit terms and participates in the preparation of the contract

documents required in connection with the extension of credit. . . ."

3. Specifically, the purchaser in a credit sale must be provided with the total cash price, the total cash downpayment, and the unpaid cash balance. None of this information must be provided by a lender in a consumer loan transaction.

4. The letter, published on June 4, 1970 reads as follows:

"If the builder is an arranger of credit he would be required to disclose in accordance with § 226.8(b) and (c) of the regulation [the credit sale disclosure provision] before consummation between the purchaser and the creditor. That is insofar as the builder is concerned this transaction would be a 'credit sale' subject to the above mentioned provisions.

"The lending institution, however, could make disclosures under the loan provisions of § 226.8(b) and (d) of the regulation [the consumer loan transaction disclosure provisions], or the builder-arranger and the lending institution could join in making a single disclosure statement under § 226.8(b) and (c) as a credit sale." CCH Consumer Credit Guide ¶ 30,399.

both Springfield Dodge and Princeton are required to disclose the information required to be disclosed by the credit sale provisions. The first is based on an advisory letter by the Director of the Federal Reserve Board subsequent to the one relied upon by the Court. In this instance, the Director had before him a question from a corporation which desired to establish a services plan which included the guarantee of a bank's revolving credit line. Addressing the issue of disclosure obligations, the director stated:

"Since, as you indicate [the corporation] appears to 'arrange for the extension of credit' as defined in section 226.2(f) so as to become a 'creditor' under section 226.2(m), in the staff's opinion, both the bank and [the corporation] would be responsible (pursuant to section 226.6(d) ) for the required disclosures. They could, of course, join in making those disclosures and it would simply be necessary for both parties to be identified on the disclosure statement." CCH Consumer Credit Guide, ¶ 30,841. (April 28, 1972).

In discussing the bank and the corporation's dual responsibilities for disclosures, this letter refers to § 226.6(d) of regulation Z. That regulation reads as follows:

"*Multiple Creditors: [J]oint [D]isclosure.* If there is more than one creditor in a transaction, each creditor shall be clearly identified and shall be responsible for making only those disclosures required by this part which are within his knowledge and the purview of his relationship with the customer. If two or more creditors make a joint disclosure, each creditor shall be clearly identified. The disclosures required under paragraphs (b) and (c) of § 226.8 [the credit sale disclosure provision] shall be made by the seller if he extends or arranges for the extension of credit. Otherwise disclosures shall be made as required under paragraphs (b) and (d) of §

226.8 [the consumer loan transaction disclosure provisions]."

This section is confusing and has caused at least one district court to reverse its interpretation of it. *Boggan v. Euclid National Bank,* 1975 CCH Consumer Credit Guide, ¶ 98,674 (N.D.Ohio 1973), *vacated and remanded* (6th Cir. 1975) (only seller must make credit sale disclosures); *Pitts v. Society National Bank of Cleveland* (N.D.Ohio 1975) (both seller and extender of credit liable for credit sale disclosures).

Plaintiff argues that the last two sentences of § 226.6(d) were placed in the regulation to insure that the seller as well as the lender makes the disclosures required in a credit sale. Defendant Princeton, on the other hand, contends that the last two sentences of this section make clear that in the situation where the seller arranges for the extension of credit, it and it alone must make the disclosures required under the credit sale provisions.

§ 226.6(d), in its original form, read:

"*Multiple Creditors: Joint Disclosures.* If there is more than one creditor in a transaction, each creditor shall be responsible for the disclosure required by this Part. If two or more creditors make a joint disclosure, each shall be clearly identified by name and address." § 226.6(e), 33 Federal Register 15509 (October 18, 1968).

The language in the current regulation conditioning the scope of disclosure required of a creditor upon his knowledge and the purview of his relationship with the customer was added at the same time as were the last two sentences. It thus seems logical to assume that the last two sentences were intended to clarify the "purview of . . . relationship with the customer" language. The first of these sentences appears to us to state that when a credit sale is involved, i. e., when the seller extends or arranges for the extension of credit, it is the seller who is responsible for the required disclosures. We reject the argument that the purpose of this sentence was to

**508**

insure that the seller, as well as the lenders, makes the disclosures required by paragraphs (b) and (c) of 226.8 [the credit sale disclosure provision". Since 15 U.S.C. § 1638, when read in conjunction with the definition of a creditor contained in 15 U.S.C. § 1602(f), unequivocally requires the seller to make such disclosures when it extends or arranges for the extension of credit, this sentence would be surplusage if its purpose was merely to insure that the seller makes the credit sale disclosures. The latter of these two sentences, the one beginning "[o]therwise", delineates the disclosure responsibilities of the non-seller creditor, both in the credit sale and the consumer loan situation.

We are aware that two courts have interpreted the multiple creditor section as imposing the credit sale disclosure requirements on lenders where the seller arranges for the extension of credit. *Pitts, supra; Lipscomb v. Chrysler Corporation*, No. C72–792 (N.D.Ohio 1973) (unreported opinion). However, while we agree with these courts that it is the purpose of the Truth-in-Lending Act to insure maximum disclosure, we do not believe that liability for credit sale disclosures can be imposed on the lender in the face of the language of the multiple creditor section.

█ Plaintiff also argues that Princeton can be held liable even if we find that it had no duty to disclose information beyond that which it did disclose. Plaintiff basis this argument on an amendment to the Truth-in-Lending Act imposing liability on assignees of creditors who have not complied with the Act, 15 U.S.C. § 1614, and a line of cases which has imposed liability on parties who do not themselves extend credit to the injured party. *Kriger v. European Health Spa*, 363 F.Supp. 334 (E.D.Wis. 1973); *Philbeck v. Timmers Chevrolet*, 361 F.Supp. 1255 (N.D.Ga.1973), *rev'd on other grounds*, 499 F.2d 971 (5th Cir. 1974); *Garza v. Chicago Health Clubs, Inc.*, 347 F.Supp. 955 (N.D.Ill.1972). These grounds are somewhat redundant,

since until the amendment dealing with assignees was passed the only way they could be held liable was if the court found their actions in bringing about the initial transactions were sufficient to make them creditors within the meaning of the Act. Plaintiff argues that this amendment demonstrates that one whom the Act does not require to make disclosures may nevertheless be liable if others fail to make the required disclosures. While we recognize that arrangements between creditors to evade the Act might be thwarted by holding all creditors to the maximum required of any creditor, we decline on this basis to impose liability for a buyer's failure to receive particular information where no express duty to disclose that information exists.

We are persuaded that our original ruling insofar as it defined the scope of plaintiff's class, granted summary judgment against defendant Springfield Dodge and in favor of defendant Princeton, dismissed without prejudice plaintiff's state law claims (except for her non-statutory reformation claim) against defendants, and granted relief in favor of plaintiff and her class, is correct. Defendant Springfield Dodge has advised us of no disputed material facts which prevent the entry of summary judgment against it. However, we shall refrain from entering summary judgment in Princeton's favor on plaintiff's reformation claim, and shall set this matter down for hearing along with plaintiff's petition for attorney's fees.

### ORDER

And now, to wit, this 30th day of May, 1975, upon the motions of plaintiff and defendant Springfield Dodge for reconsideration of this Court's Order dated January 31, 1975, it is hereby Ordered that the motion of plaintiff for certification of a class under Federal Rule 23(b)(2) is hereby GRANTED. Plaintiff is certified as the representative of all those who have been, or will be, denied their rights under 15 U.S.C. § 1638 by defendant Springfield Dodge.

Plaintiff's motion for a certification of defendants as representatives of a class of defendants is hereby DENIED.

Plaintiff's motion for summary judgment is hereby GRANTED as to Springfield Dodge and denied as to Princeton Consumer Discount Company. Defendant Princeton's motion for summary judgment is hereby granted. Judgment is hereby entered in favor of plaintiff and against Springfield Dodge in the amount of one thousand dollars ($1,000.-00), as well as costs and a reasonable attorney's fee. Defendant Springfield Dodge is hereby enjoined from arranging for the extension of credit to plaintiff or any member of the class she represents without providing the disclosures required by 15 U.S.C. § 1638. Judgment is hereby entered in favor of Princeton Consumer · Discount and against plaintiff on plaintiff's claim.

A hearing shall be scheduled on the matter of plaintiff's reformation claim and plaintiff's petition for attorney's fees.

And it is so ordered.