**Janice KIRKALDY**

v.

**CENTRAL CITY TOYOTA, et al.**

**Civ. A. No. 83–2973.**

United States District Court,
E.D. Pennsylvania.

Nov. 30, 1983.

Susan L. Anderson, Philadelphia, Pa., for Janice Kirkaldy.

Lawrence T. Phelan, Philadelphia, Pa., for Fidelity Consumer Discount Co.

Thomas A. Shovlin, White & Williams, Philadelphia, Pa., for Central City Toyota.

## MEMORANDUM

GILES, District Judge.

In June, 1982, Janice Kirkaldy purchased a car from Central City Toyota ("Central City") and, after making a down payment, received financing for the balance due from Fidelity Consumer Discount Co. ("Fidelity"). She now seeks monetary damages and rescission of the transactions pursuant to the Truth-in-Lending Act, as amended ("the Act"), 15 U.S.C. § 1601–1693r and Regulation Z ("Reg. Z"), 12 C.F.R. § 226 *et seq.* (1982). Jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1337 and 15 U.S.C. § 1640(e) and 12 C.F.R. § 226.1(c) (1982). Essentially, plaintiff contends that there was a credit sales transaction with Central City being an arranger of credit and that she was entitled to disclosures in compliance with the Truth-in-Lending Act and Regulation Z. The defendants contend that Central City was not an arranger of credit and that the financing was a consumer transaction. There is no dispute that the contents of the financial disclosure statement from Fidelity suffices if there was a consumer transaction.

After a Bench trial, the court agrees with defendants. The following constitutes findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.

## FINDINGS OF FACT

1. On June 23, 1982, plaintiff purchased a 1980 Pontiac Sunbird from Central City. The purchase price was $6,415.60.

2. At the time of the purchase, plaintiff stated that she could make a down payment of $1,000.00 and wanted to finance the balance of the purchase price.

3. Marc Buschel, Central City's salesman, asked plaintiff to provide information about her financial background and credit history. Central City accepted a check in the amount of $1,000.00 from plaintiff on June 23, 1982 and plaintiff took delivery of the car the same day.

4. Buschel told plaintiff that he would find an institution or agency to finance the balance due to Central City, which included an additional amount advanced for the purchase of requisite automobile insurance.

5. On or about June 24, 1982, Buschel telephoned Louis Leone, Loan Manager of Fidelity Consumer, provided him with the financial background information obtained from plaintiff and asked him to determine if Fidelity would be willing to make a loan to plaintiff.

6. On or about June 25, 1982, Leone called Buschel and told him that Fidelity would extend credit to finance plaintiff's purchase. Leone requested Mr. Buschel to call plaintiff, advise her of Fidelity's decision and set up a meeting between plaintiff and Mr. Leone.

7. Leone did not discuss Fidelity terms of credit with Buschel or anyone else from Central City.

8. Leone also called plaintiff to confirm the meeting time, place, informed her that making the loan would entail a lien against her real property and requested that she bring to the meeting proof of her ownership of the property. This she did. She brought to the meeting her fire insurance policy.

9. On June 25, 1982, a meeting took place between plaintiff and Leone at Central in Buschel's office. Buschel introduced plaintiff and Leone and then left. Neither Buschel nor any other representative of Central City attended or participated in the meeting.

10. Prior to the meeting on June 25, 1982, Leone prepared all of the Fidelity loan contract documents required in connection with the extension of credit.

11. Neither Buschel nor anyone else from Central City participated in the preparation of the documents required in connection with the extension of credit.

12. Except for telling plaintiff that Fidelity had agreed to extend credit, neither Mr. Buschel nor anyone else at Central City ever discussed any financing or the extension of credit by Fidelity with plaintiff.

13. Leone never informed anyone at Central City of the terms of the financing arrangement agreed upon between plaintiff and Fidelity Consumer Discount Co.

14. On or about June 25, 1982, Central City received check No. 192 in the amount of $5,693.97. The check was issued by Fidelity Consumer Discount Co. and was made payable to plaintiff. Plaintiff endorsed this check over to Central City.

15. The balance of the original purchase price ($6,415.60) after payment of the down payment ($1,000.00) was $5,415.60. Check No. 192 contained an overpayment in the amount of $278.37.

16. On June 30, 1982, Central City issued check No. 44484 in the amount of $278.37 to plaintiff as a refund of the overpayment. This sum was used by Central City with plaintiff's knowledge and authorization to pay for her car insurance for her benefit.

17. Central City received no referral fee, compensation or other consideration from Fidelity.

18. At the meeting between Leone and plaintiff, numerous documents were signed, including the federal disclosure

statement, notice of right of rescission, and endorsement of the check made payable to her from Fidelity Consumer Discount.

19. Contrary to plaintiff's contentions, I find that at the meeting, all the loan documents were filled out, explained to her by Leone, and she received copies of the same. I find that plaintiff was then so engrossed with the idea of owning the car in question that her present recollection of the events of the meeting cannot be credited. Moreover, the duration of the meeting by her account was an hour and a half and by Leone's about forty minutes which is consistent with Leone's version and very inconsistent with plaintiff's.

20. Plaintiff also acknowledged discussion, her full understanding and receipt of copies of all that she executed by writing in her own hand a statement to that effect. The statement recognized that a lien was placed on her real estate.

21. The disclosure statement made disclosures applicable to a consumer loan.

22. The disclosure statement did not make the disclosures required for a credit sale.

23. Fidelity Consumer Discount took a security interest in plaintiff's residence.

24. Leone visited plaintiff's home on June 30, 1982 at which time she executed a form stating that, more than three days having passed since the loan transaction, she had not rescinded the transaction.

25. On December 4, 1982, plaintiff attempted to rescind the transaction as to Fidelity Consumer Discount by letter.

## DISCUSSION

The sole issue in this case is whether Central City, the seller, was also an arranger of credit as defined in 12 C.F.R. § 226.2(f) (1982). If it was, then the transaction was a credit sale, 15 U.S.C. § 1602(g) (prior to amendment by Pub.L. 96–221), and Central City would have been obligated to make certain disclosures pertaining to such sale. 15 U.S.C. § 1638. If Central City was not an arranger of credit, it was not required to make any disclosures

to plaintiff, it is not liable under the Act and the transaction is treated as a consumer credit transaction.

The Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.*, imposed an obligation upon "creditors" to disclose certain information in connection with the extension of credit. As of June, 1982, when the events at issue occurred, the Act defined the term "creditor" as referring only to "creditors who regularly extend, or arrange for the extension of, credit. 15 U.S.C. § 1602(f) (prior to effective date of amendment by Pub.L. 96–221).

Plaintiff does not allege that Central City Toyota extended credit to her. Rather, plaintiff alleges that Central City arranged the extension of credit to plaintiff by Fidelity Consumer Discount Company. As of June, 1982, the operative definition was as follows:

> Arrange for the extension of credit ... means to provide or offer to provide consumer credit ... which is or will be extended by another person under a business or other relationship pursuant to which the person arranging such credit ... (1) receives or will receive a fee, compensation, or other consideration for such service or (2) has knowledge of the credit ... terms and participates in the preparation of the contract documents required in connection with the extension of credit ..."

12 C.F.R. § 226.2(f) (1982).

On its face, § 226.2(f) requires more than that the seller of a product bring the buyer and lender together before the seller becomes an arranger of credit. A plaintiff must show that the seller received some kind of consideration for referring the prospective borrower to the creditor, whether it be a referral fee, *Starks v. Orleans Motors, Inc.,* 372 F.Supp. 928, 930 (E.D. La.), *aff'd,* 500 F.2d 1182 (5th Cir.1974), a rebate of portion of the finance charge, *Meyers v. Clearview Dodge Sales, Inc.,* 539 F.2d 511, 516 (5th Cir.1976), *cert. denied,* 431 U.S. 929, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977), or some tangible consideration for

**220**

services rendered as distinguished from the mere receipt of loan proceeds for the item sold and delivered. FRB Official Staff Interpretation, September 30, 1976 [1974–1977 Transfer Binder] CONS.CRED. GUIDE (CCH) ¶ 31,460. *Manning v. Princeton Consumer Discount Co., Inc.,* 397 F.Supp. 504, 506 (E.D.Pa.1975), *aff'd,* 533 F.2d 102 (3d Cir.1976), *cert denied,* 429 U.S. 865, 97 S.Ct. 173, 50 L.Ed.2d 144 *reh'g denied,* 429 U.S. 933, 97 S.Ct. 342, 50 L.Ed.2d 303 (1976), relied upon by plaintiff, is limited to its facts. There, an important factor in the court finding a credit transaction was that the car dealership received a referral fee from the lender.

▆▆▆ Here, no referral fee, compensation or other consideration was paid by Fidelity to Central City. The Federal Reserve Board in an advisory letter stated that "other consideration" as used in § 226.2(f) refers to tangible payment corresponding to a fee or similar compensation. It was not intended to encompass the various intangible business benefits which flow from the commercial relationship between parties. FRB Letter of April 16, 1970 [1969–1974 Transfer Binder] CONS.CRED. GUIDE (CCH) ¶ 30,347. The mere fact that a seller of goods is paid the cash price for those goods out of the proceeds of a direct loan obtained by the customer, from a creditor found by the seller, for that purpose does not in itself make the seller an arranger of credit. FRB Official Staff Interpretation, September 30, 1976 [1974–1977 Transfer Binder] CONS.CRED. GUIDE (CCH) ¶ 31,460. Advisory letters and Staff Interpretations are not binding on this court. However, they are entitled to great weight because they represent the experience and informed judgment of an agency to which Congress has delegated substantial authority. *Mourning v. Family Publications Services, Inc.,* 411 U.S. 356, 365, 93 S.Ct. 1652, 1658, 36 L.Ed.2d 318 (1973); *Stewart v. Dollar Federal Savings & Loan Ass'n,* 523 F.Supp. 218, 221 (S.D.Ohio 1981).

▆▆▆ Under § 226.2 a plaintiff may establish an arranger of credit status by showing that the seller had knowledge of the credit terms extended by the lender and participated in the preparation of the contracted documents required in connection with the extension of credit. Fidelity's Loan Manager, Leone, never informed anyone at Central City of the terms of the financing agreement that he had reached with the plaintiff. Furthermore, there is no evidence that Central City dictated the terms of credit to Fidelity. Indeed, Fidelity made its own credit check, an independent evaluation of plaintiff's credit worthiness and determination of interest rates, collateral and terms of repayment. In *Manning,* the plaintiff was informed of the terms of the loan contract by a representative of the auto dealer before her meeting with the finance company. 397 F.Supp. at 505. Thus, the absence of knowledge of the credit terms in and of itself precludes a finding that Central City was an arranger of credit. Moreover, the evidence also shows that Central City did not participate in the preparation of the contract documents necessary for the extension of credit.

In *Stewart v. Dollar Federal Savings and Loan Association, supra,* where a contractor was not only present when the plaintiff signed the promissory note prepared by the bank, but also informally helped plaintiff fill out the credit documents, the court held that such activities did not constitute participation in the preparation of the credit documents. *See also Gerasta v. Hibernia National Bank,* 411 F.Supp. 176, 186 (E.D.La.1975), *reversed in part on other grounds,* 575 F.2d 580 (5th Cir.1978) (completion of loan application by contractor's representative did not constitute requisite participation); FRB Letter of September 5, 1969 [1969–1974 Transfer Binder] CONS.CRED. GUIDE (CCH) ¶ 30,154; FRB Letter of June 4, 1970 [1969–1974 Transfer Binder] CONS.CRED. GUIDE (CCH) ¶ 30,399 (arranger must participate in the preparation of the actual contract documents); FRB Letter of October 15, 1969 [1969–1974 Transfer Binder] CONS. CRED. GUIDE (CCH) ¶ 30,557 (builder who

merely completes loan applications or initiates credit checks does not participate in preparation of documents).

Section 226.2(f) thus sets forth two alternative tests for establishing a party's status as an arranger of credit. The first requires proof of the receipt of consideration for arranging credit. The alternative test requires a dual showing that the purported arranger had knowledge of the credit terms and participated in the preparation of the contract documents. Plaintiff has failed to show that Central City satisfies either test.

## CONCLUSION

Because Central City neither extended nor arranged credit, the transaction involving plaintiff was not a "credit sale" under 15 U.S.C. § 1602(g). Consequently, Central City was not required to make any disclosures.

Accordingly, the court finds in favor of the defendants.