**Mark LANDESMAN and Barbara Landesman, Plaintiffs,**

v.

**CITY OF NEW YORK, Edward Koch, Robert McGuire, Milton Schwartz, Irving Levitan, Edward Roge, Joseph Gargan, George Gallagher, Salvatore Martallaro, and Paul Fried, Defendants.**

80 C 58.

United States District Court, E. D. New York.

Oct. 21, 1980.

Mark Landesman, pro se and for plaintiffs.

Allen G. Schwartz, Corp. Counsel, New York City, for defendants by Robert M. Katz, Ellen B. Fishman, Asst. Corp. Counsels, New York City.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

This civil rights action brought by a husband and wife under 42 U.S.C. §§ 1983, 1985 and 1986, as well as under a variety of State tort theories, arises out of an incident at a police precinct in Boro Park, Brooklyn, following a demonstration protesting the alleged lack of police protection after the felony murder of an area resident. Mark Landesman (hereafter "plaintiff") alleges basically that, on or about January 8, 1979, defendants in bad faith and without reasonable belief that he had committed any crime or violated any law of the State of New York caused him to be arrested and prosecuted for assaults on police officers Fried and Martallaro, named in the complaint as defendants. Plaintiffs seek damages against defendants in the amount of $2,200,000. The action is now before the court on motion of defendants City of New York, Edward Koch and Robert McGuire ("movants") to dismiss the complaint for

lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.[1] Rules 12(b)(1) and (6), F.R. Civ.P. For the following brief reasons, the motion is granted.

As this court only recently had occasion to note in another civil rights action,

> "the issue here is not whether plaintiffs will ultimately prevail but whether they are entitled to offer evidence in support of their claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236 [94 S.Ct. 1683, 1686, 40 L.Ed.2d 90] (1974); *Lipsky v. Com. United Corp.*, 551 F.2d 887, 895 (2d Cir. 1976). Therefore, all well pleaded material allegations will be accepted as true and the complaints will be construed in favor of the complaining parties, *Cruz v. Beto*, 401 U.S. 319, 323 [92 S.Ct. 1079, 1082, 31 L.Ed.2d 263] (1972); *Jenkins v. McKeithen*, 395 U.S. 411, 421–22 [89 S.Ct. 1843, 1848–1849, 23 L.Ed.2d 404] (1969), recognizing that there cannot be a dismissal unless it appears beyond doubt that plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46 [78 S.Ct. 99, 101–102, 2 L.Ed.2d 80] (1957). See generally *Scheuer v. Rhodes, supra*, 416 U.S. at 237 [94 S.Ct. at 1686]." *Jones v. Kneller*, 482 F.Supp. 204 (E.D.N.Y.1979), *aff'd unpub'd mem.* (2d Cir., May 2, 1980).

■ It is equally well established, however, that a civil rights complaint must contain more than "conclusory," "vague," or "general allegations" of constitutional deprivation. *Black v. United States*, 534 F.2d 524 (2d Cir. 1976); *Koch v. Yunich*, 533 F.2d 80 (2d Cir. 1976); *Fine v. City of New York*, 529 F.2d 70 (2d Cir. 1975). Such allegations must be amplified by specific instances of misconduct, *Ostrerer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977), or "some specific allegations of fact indicating a deprivation of civil rights, rather than state simple conclusions," *Koch v. Yunich, supra*, 533 F.2d

at 85. See also *Perrotta v. Irizarry*, 430 F.Supp. 1274 (S.D.N.Y.1977), *aff'd*, 573 F.2d 1294 (2d Cir. 1978). These principles govern the complaint here.

The complaint alleges that at all times relevant to the action defendants Koch and McGuire were Mayor of the City of New York and Police Commissioner respectively and were acting within the scope of their employment. Along with the other defendants, they are alleged to have caused plaintiff to be deprived of various civil rights. The basis for this conclusion is plaintiff's averment that movants, among others, "caused, directed and/or ordered said plaintiff to be arrested and prosecuted for alleged assaults" without probable cause and in bad faith (Complaint ¶ 25).

The complaint goes on to allege that defendants' actions in causing and directing plaintiff's arrest and prosecution were done for an ulterior motive, to serve the purposes of the defendants "so as to enable them to claim that they had made arrests and punished alleged wrong–doers in connection with the 66th precinct disturbance by using the plaintiff, MARK LANDESMAN, and others as scapegoats" (Compl. ¶ 27). Plaintiffs further claim that the defendants encouraged police officers to allege numerous crimes on the part of the local community and to file complaints and make allegations of wrongdoing irrespective of the truth or falsity thereof (Compl. ¶¶ 30, 35). Finally, the complaint alleges that in response to pressure exerted by ·defendant Koch, defendant McGuire initiated an investigation that resulted in plaintiff's arrest out of which he suffered various indignities, such as being handcuffed, fingerprinted, strip searched, as well as having his "mug" shot placed in the "Rogues Gallery." He also claims that as a result of his arrest he has been threatened, has received hate mail and has suffered mental and physical distress and harm to his professional reputation. Plaintiff is a lawyer.

---

1. Counsel for defendants contends that service of process is insufficient as to all defendants except the City of New York, Edward Koch and Robert McGuire, the movants herein. The suf-

ficiency of service of process, however, has not been drawn in issue by the motion before the court.

The complaint avers further that the foregoing "was perpetrated, encouraged and allowed to continue with the knowledge and connivance of defendants or either of them, with malice, and in reckless disregard of the truth, that crimes were, in fact, not committed and that, in any event, this plaintiff, MARK LANDESMAN, had not committed any crimes" (Compl. ¶ 47). Plaintiffs go on to assert that defendants "in their positions as superiors and superior officers of the New York City Police Department, and the defendant, CITY OF NEW YORK, at all times relevant hereto, had knowledge that the wrongs that were done to plaintiff, MARK LANDESMAN, were about to be committed and they had the power to prevent or aid in preventing those wrongs from being committed" (Compl. ¶ 54).

■ Viewing the pleadings in the light most favorable to the plaintiffs, yet with an eye to the factual setting from which the causes of action allegedly arose, it is this court's conclusion that plaintiffs have failed to state a claim upon which relief can be granted as to the movants herein. While the complaint alleges that plaintiff was falsely arrested without probable cause, in bad faith and for ulterior motive, these are conclusory allegations that fail to satisfy plaintiffs' burden of pleading specific facts in support of their claims. Careful examination of the complaint reveals that, with respect to defendants Koch and McGuire, it is based wholly on speculation and conjecture and is an artful attempt to satisfy the pleading requirements of the federal rules while avoiding the proscriptions of Rule 11, F.R.Civ.P.

The complaint, taken as a whole, demonstrates that the factual basis for plaintiffs' claims against the movants arises out of the Mayor's reaction to the "assault" on the 66th precinct in Boro Park, Brooklyn. For example, at ¶ 29 of the complaint, plaintiffs allege that the disturbance "had been played up by the media and was given wide publicity and had, in effect, become a media event." They go on to allege

"31. That defendant, MAYOR KOCH, further blew this media event out of proportion by publicly denouncing the community for its demonstration which, in fact, sought more police protection in response to a robbery murder of one of the members of the community.

"32. That defendant, MAYOR KOCH, publicly and in the media, denounced the community as having 'raped the precinct.'

"33. That the aforesaid added to, contributed to and caused banner headlines to be printed to the effect that '3,000 Hassidim stormed the precinct.'

"34. That in connection with the aforesaid, and the reaction thereto, defendant, MAYOR KOCH, publicly vowed to have the alleged community wrongdoers arrested and prosecuted for the alleged 'rape of the 66th precinct.'

"35. That police officers, such as defendants, MARTALLARO and FRIED, among others, were encouraged to file complaints and make allegations of wrongdoing irrespective of the truth or falsity thereof.

"36. That pursuant thereto, and in response to pressure from defendant, MAYOR KOCH, defendant, POLICE COMMISSIONER McGUIRE, initiated a major investigation and assigned the same to the Patrol Brooklyn Boro South Special Investigation team."

Plaintiffs conclude that, as a consequence of this investigation, plaintiff Mark Landesman was arrested upon the complaints of officers Martallaro and Fried.

It is manifest—and the carefully drafted complaint attests to plaintiff's caution—that plaintiff seeks an answer to his complaint from Mayor Koch and Police Commissioner McGuire on the basis of no more than the Mayor's public rhetoric following the incident at the 66th precinct and his perfectly proper response to it by initiating an investigation. There is simply no direct allegation that Mayor Koch or Police Commissioner McGuire caused plaintiff's—or for that matter, anyone's—false arrest, notwithstanding the allegations of paragraphs 25 through 27 of the complaint which accuse

*someone* of causing such an arrest. Nor does plaintiffs' allegation at paragraph 27 of the complaint materially improve the claim. It is based on pure surmise, arising no doubt out of the Mayor's public statements, that the purpose of the arrest was to satisfy ulterior motives of the defendants, presumably such as to quell the Mayor's outrage by making *someone* a scapegoat.

To require an answer to these allegations on the theory that Mayor Koch and Police Commissioner McGuire's official actions in response to the incident at the 66th precinct *might have* resulted in an improper or excessive reaction by those actually responsible for investigating and making arrests would subvert the orderly administration of government without materially advancing plaintiff's right of action against any actual wrongdoers. Relief in these circumstances might be had in the political, rather than the judicial, arena, since plaintiffs' claims against defendant Koch appear based on their speculation that the Mayor's manner and method of governing provoked responses in his subordinates which resulted in alleged violations of plaintiff's constitutional rights. While the Mayor's style might be the basis for seeking a new mayor, it is not on the allegations of this complaint the basis for a damage action for deprivation of civil rights. Neither the federal civil rights laws nor the notice pleading requirements of the federal rules of civil procedure require a different conclusion.

■ The sole rational basis for maintenance of this action against defendants Koch and McGuire is on the principle of *respondeat superior.* This theory, of course, is not a permissible basis for liability under the federal civil rights laws. See, *e. g., Monell v. Department of Social Services,* 436 U.S. 658, 663 n.7, 98 S.Ct. 2018, 2022, 56 L.Ed.2d 611 (1978); *Williams v. Vincent,* 508 F.2d 541 (2d Cir. 1974); *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). See also *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).

■ Plaintiffs have also failed to sustain their burden of pleading an unconstitutional governmental policy that caused or was the moving force behind violation of plaintiff's constitutional rights sufficient to state a claim against the City of New York under *Monell v. Department of Social Services, supra,* 436 U.S. at 691, 98 S.Ct. at 2036. There the Supreme Court determined that a municipality is liable under § 1983 only where

"the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that [municipality's] body's officers.... Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort."

And the Court of Appeals for this circuit has stated that

"in order for a governmental entity to be liable 'for its own violations,' ... the plaintiff in a § 1983 action bears the burden of showing first the governmental entity maintained or practiced an unconstitutional 'policy' or 'custom,' ... and second that that policy or custom 'caused' or was the 'moving force' behind the violation."

*Dominguez v. Beame,* 603 F.2d 337, 341 (2d Cir. 1979), *cert. denied,* 446 U.S. 917, 100 S.Ct. 1850, 64 L.Ed.2d 271 (1980).

Most recently in *Turpin v. Mailet,* 619 F.2d 196 (2d Cir. 1980) (*Turpin III*), the court first determined that an official policy within the meaning of *Monell* can be promulgated by implicit or tacit authorization, approval or encouragement of unconstitutional action and held that the failure to act may in certain circumstances give rise to an official policy. *Id.* at 200–202. It went on to address appellant's contention that, even if a policy can be inferred from omissions of a municipality, such as where it acquiesces in a pattern of illegal conduct, such a policy cannot be inferred from a failure to discipline a single police officer for a single incident of illegality. The court stated:

"We agree that, absent more evidence of supervisory indifference, such as acquiescence in a prior pattern of conduct, a

policy could not ordinarily be inferred from a single incident of illegality such as a first arrest without probable cause or with excessive force.... However, a single, unusually brutal or egregious beating administered by a group of municipal employees may be sufficiently out of the ordinary to warrant an inference that it was attributable to inadequate training or supervision amounting to deliberate indifference or 'gross negligence' on the part of officials in charge." *Id.* at 202 (citations and footnote omitted). See *Owens v. Haas,* 601 F.2d 1242 (2d Cir. 1979); *Leite v. City of Providence,* 463 F.Supp. 585 (D.R.I.1978). But *cf. Popow v. Margate,* 476 F.Supp. 1237 (D.N.J.1979).

Assuming, as we must, that as to plaintiff this is a "first arrest" case, our task then in assessing the sufficiency of the *Monell* claim is to determine whether "the facts pleaded support the inference that unconstitutional action was taken against the individual pursuant to [a specific] ... policy" directed against him. *Smith v. Ambrogio,* 456 F.Supp. 1130, 1134 (D.Conn. 1978) (Newman, D. J.), quoted in *Turpin III, supra,* 619 F.2d at 202 n.7.

Careful scrutiny of this complaint fails to reveal any official policy, such as purposefully to arrest an identifiable class of individuals, see *Dominguez v. Beame,. supra,* or a single egregious incident sufficiently out of the ordinary to warrant an inference that it derived from some official policy, see *Turpin III, supra.* There is simply no allegation that an unconstitutional official policy caused violations of plaintiff's constitutional rights. Nor are there allegations from which such a policy could be inferred. At its best, the complaint demonstrates plaintiff's belief that his alleged harm was caused by official over–reaction to the specific incident of lawlessness at the 66th precinct in Boro Park. This fails to state a claim against the City of New York under *Monell.* Moreover, the conduct of defendants Koch and McGuire, as already noted,

appears from the allegations regarding them to be in all respects within their respective governmental functions and a proper response to such incident notwithstanding plaintiffs' conclusory allegations of bad faith and malice. Without specific factual allegations of a direct link between an official policy and plaintiff's alleged injuries, the manner in which these defendants conduct the affairs of their respective offices is not the basis for municipal liability under the federal civil rights laws.

While other defendants might properly be required to answer the complaint, allegations fundamentally asserting that Mayor Koch exhorted various police officers to arrest and prosecute wrongdoers and that Police Commissioner McGuire commenced an investigation and was in charge of these officers are insufficient to require an answer as to any of the movants.

We also agree with the movants' contention that the §§ 1985, 1986 claims are deficient on an additional ground. Although plaintiff's arrest apparently arose out of an incident involving Hasidic Jews, there is no allegation that plaintiff is a member of this class and was arrested because of his membership or that defendants acted out of any class–based animus. See *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Hodas v. Lindsay,* 431 F.Supp. 637, 645 (S.D.N.Y. 1977); *Perrotta v. Irizarry, supra,* 430 F.Supp. at 1278. See also discussion in *Jones v. Kneller, supra.*

Accordingly, the moving defendants' motion to dismiss the complaint for failure to state a claim is hereby granted in all respects.[2]

SO ORDERED.

---

**2.** Since the court's decision today is that the complaint as framed does not state a federal claim, our view is that the exercise of pendent jurisdiction over plaintiff's State tort claims

would be inappropriate under the circumstances of this case. See *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).