Marie STEWART, Plaintiff,

v.

DOLLAR FEDERAL SAVINGS AND LOAN ASSOCIATION, Defendant.

No. C-3-80-227.

United States District Court,
S. D. Ohio, W. D.

Sept. 17, 1981.

Rodney M. Johnson, Dayton, Ohio, for plaintiff.

Thomas Noland, Stephen Miles, Dayton, Ohio, for defendant.

DECISION AND ENTRY ON OUTSTANDING MOTIONS; DEFENDANT'S MOTION FOR SUMMARY JUDGMENT GRANTED; PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT DENIED; PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIM GRANTED; PLAINTIFF'S MOTION TO COMPEL DISCOVERY DEEMED MOOT AND NOT RULED UPON; TERMINATION ENTRY

RICE, District Judge.

The captioned cause involves alleged violations of provisions of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.* and regulations promulgated thereunder, 12 C.F.R. § 226 *et seq.* (Regulation Z).[1] Several motions are before this Court, to wit:

1. Defendant's motion for summary judgment for reason that there is no set of genuinely disputed or disputable facts present which would indicate that defendant is liable for violations of the TILA;

2. Plaintiff's motion for summary judgment;

3. Plaintiff's motion to dismiss defendant's counterclaim; and

4. Plaintiff's motion to compel discovery.

For the reasons set forth below, defendant's motion for summary judgment is well taken and the same is hereby granted. Plaintiff's motion for summary judgment is

---

1. On March 30, 1980, the President signed into law the Truth in Lending Simplification and Reform Act (1980 Act), as Title VI of the Depository Institutions Deregulation and Monetary Control Act of 1980. 94 Stat. 132, 168. While various provisions of the 1980 Act amend or repeal TILA sections at issue in the instant case, the 1980 Act does not take effect until April 1, 1982, and thus does not affect the instant litigation. 94 Stat. 185. Likewise, new regulations promulgated under the 1980 Act supercede older regulations at issue in this case, but the new regulations, while becoming effective on April 1, 1981, do not become binding on creditors until March 31, 1982. Compliance with the new regulations is optional until the latter date. 46 Fed.Reg. 20848 (1981).

denied. Plaintiff's motion to dismiss defendant's counterclaim is granted, for the reason that the counterclaim is permissive and this Court lacks jurisdiction to adjudicate the counterclaim once plaintiff's action is dismissed. Finally, plaintiff's motion to compel discovery is deemed moot by the above rulings and said motion is not ruled upon.

## I. FACTS

Plaintiff Marie Stewart obtained a consumer credit loan from the defendant, Dollar Federal Savings & Loan Association, on June 11, 1979, in the amount of $2,600.00. The loan agreement, in pertinent part, set out in individual, numbered boxes the following amounts:

1. Proceeds of loan: $2,600.00
2. Credit Life Premium: None
3. Amount Financed: $2,600.00
4. Finance Charge: $1,039.60
5. Total Payments: $3,639.60
6. Annual Percentage Rate: 14.13%

At the same time, plaintiff signed a promissory note paid to the order of the defendant, for an amount equalling the total payments on the loan ($3,639.60). The note contained an acceleration clause, in that upon default in payment on the loan (or other events specified on the note), the "unpaid balance hereof shall become due and payable, without demand or notice."

Plaintiff had previously dealt with defendant. On September 7, 1978, plaintiff had borrowed $908.12 from defendant, and the June 11, 1979, transaction was in fact a refinancing of the 1978 loan (in the amount of $625.00), plus an additional loan of $1,975.00, yielding a total of $2,600.00. Plaintiff planned to pay the additional loan amount to the Home Roofing and Siding Company (Home Roofing) for improvements to her house (installation of ten electrical outlets and ten non-insulated aluminum windows). Plaintiff alleges that an agent of Home Roofing suggested defendant as a source of financing for the improvements, and that this individual drove her to defendant's offices and aided her in obtaining the loan.

However, plaintiff was dissatisfied with Home Roofing's work and ultimately refused to continue payments either to Home Roofing or on the loan from defendant. Plaintiff thereupon sued defendant in this Court, alleging that the loan agreement violated provisions of the TILA and regulations promulgated thereunder, and prayed for statutory damages of $1,000 plus attorney's fees. 15 U.S.C. § 1640(a)(1). Plaintiff properly invoked the jurisdiction of this Court pursuant to 15 U.S.C. § 1640(e) and 28 U.S.C. § 1337. Shortly thereafter, defendant filed a counterclaim for the balance of the loan which plaintiff had left unpaid.

## II. MOTIONS FOR SUMMARY JUDGMENT

Pursuant to Fed.R.Civ.P. 56, this Court, in ruling upon a motion for summary judgment, must view the evidence in the light most favorable to the party opposing the motion. *New Jersey Life Ins. Co. v. Getz*, 622 F.2d 198, 200 (6th Cir. 1980). In the present case, both parties have moved for summary judgment. The granting of one motion does not necessarily warrant the denial of the other motion, unless the parties base their motions on the same legal theories and same set of material facts. *Schlytter v. Baker*, 580 F.2d 848, 849 (5th Cir. 1978). In this case, both parties proceed on the basis of undisputed facts, save for the plaintiff's allegation of defendant's affiliation with Home Roofing. However, defendant argues that even if plaintiff's allegations on this issue are taken as true, defendant should still prevail as a matter of law. Thus, this Court will treat both motions for summary judgment as arising from the same legal theories and the same set of undisputed facts.

Plaintiff argues that the 1979 loan agreement form violated the TILA in three respects:

1. failure to itemize the loan proceeds;
2. failure to disclose on the loan form:
   a. Home Roofing's ability to obtain a mechanic's lien on plaintiff's house, and
   b. Home Roofing as an "arranger of credit";

3. failure to disclose the promissory note's acceleration clause on the loan form.

Each argument is without merit.

1. Itemization of Loan Proceeds.

Section 1639(a) of the TILA, in pertinent part, outlines the items which a consumer lender, such as defendant, must disclose on a consumer loan form:

(1) The amount of credit of which the obligor will have the actual use, or which is or will be paid to him or for his account or to another person on his behalf.

(2) All charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge.

(3) The total amount to be financed (the sum of the amounts referred to in paragraph (1) plus the amounts referred to in paragraph (2)).

15 U.S.C. § 1639(a)(1)–(3).

These disclosure requirements are further outlined in the relevant regulations, which require the following information to appear on the loan form:

The amount of credit . . . which will be paid to the customer or for his account or to another on his behalf, including all charges, individually itemized, which are included in the amount of credit extended but which are not part of the finance charge, using the term "amount financed."

12 C.F.R. § 226.8(d)(1) (1981).

■ From this statutory and regulatory language, plaintiff argues that the "loan proceeds" box of the loan form should have been itemized into the separate amounts of the refinancing of the 1978 loan and the new 1979 loan amount. This is an erroneous interpretation. The itemization requirement mentioned in both the statute and regulation simply does not apply to the "amount of credit" referred to in § 1639(a)(1) or, in other words, to the loan proceeds. Only charges made by the lender for costs incurred in connection with the making of the loan, which are not included in the finance charge, such as insurance and recording fees, need be itemized. *McGowan v. Credit Center of North Jackson, Inc.*, 546 F.2d 73, 76 (5th Cir. 1977); *Basham v. Finance America Corp.*, 583 F.2d 918, 922 (7th Cir. 1978), *cert. denied*, 439 U.S. 1128, 99 S.Ct. 1046, 59 L.Ed.2d 89 (1979). The amount of the loan proceeds must be disclosed, and a lump sum figure satisfies this requirement. *Pollock v. General Finance Corp.*, 535 F.2d 295, 299 (5th Cir. 1976); *Basham v. Finance America Corp., supra*, at 922–23. Defendant disclosed such a lump sum figure on the loan form.[2]

■ As an additional defense for the failure to itemize the loan proceeds, defendant relies upon an Official Staff Interpretation of the Federal Reserve Board (FRB), the agency charged with enforcement of the TILA. 15 U.S.C. § 1607. The staff interpretation expressly held that itemization of the components of loan proceeds is not required by § 1639(a)(1) and 12 C.F.R. § 226.8(d)(1). FRB Official Staff Interpretation, 42 Fed.Reg. 53949 (1977). Unless demonstrably irrational, such FRB staff opinions construing the TILA or its regulations should be "dispositive" and treated as persuasive authority. *Anderson Bros. Ford v. Valencia*, —— U.S. ——, ——, 101 S.Ct. 2266, 2273–74, 68 L.Ed.2d 783 (1981); *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 566–68, 100 S.Ct. 790, 797–98, 63 L.Ed.2d 22 (1980); *Rudisell v. Fifth Third Bank*, 622 F.2d 243, 250 (6th Cir. 1980). As noted above, this Court finds the conclusions of the FRB staff to be fully justified. Thus,

2. In *Barbieri v. Commercial Credit Loans*, 596 F.2d 660 (5th Cir. 1979), the consumer lender did not list in the loan form a lump-sum figure for loan proceeds, but instead listed separately the amount used to retire prior indebtedness and the amount paid to the borrower. This is precisely the itemization plaintiff alleges that defendant should be held liable for failing to make in the instant case. The court in *Barbieri* held that such an itemization did not violate § 1639(a)(1), since the statute does not require disclosure of "the *total* amount of credit," and because the breakdown was "helpful." *Id.* at 661–62. However, such itemization, while *permissible*, was not *required* by § 1639(a)(1). *Id.* at 662. Thus, *Barbieri* is of no aid to plaintiff.

reliance on this FRB interpretation constitutes an "act done or omitted in good faith in conformity" with an official, published interpretation of the FRB which, under the TILA, § 1640(f), precludes defendant from being held liable in a civil action.[3]

2. Disclosure of Security Interest and Home Roofing as an "Arranger of Credit"

■ Plaintiff's second allegation regarding the loan form predicates liability on § 1639(a)(8) of the TILA, which requires creditors to disclose "any security interest held or to be retained or acquired by the creditor in connection with the extension of credit . . . ." In the present case, plaintiff argues that this section was violated since the loan form did not reveal the possibility that Home Roofing could obtain a mechanic's lien on plaintiff's home if she failed to pay Home Roofing. Defendant held no security interest as defined by the TILA, and plaintiff's position has been rejected by case law and the FRB.

In *Rudisell v. Fifth Third Bank, supra,* the court stated that a direct loan made to a customer who used the proceeds to pay for home repairs would not require disclosure on the loan form of a possible mechanic's lien by the repair service:

Had Appellee [Fifth Third Bank] loaned the money directly to Appellant [customers] and Appellants then used the money for a cash sale from A.W.D. [home repair service], clearly A.W.D. would not have arranged or extended credit and would not have been a creditor. As Fifth Third Bank would have been the only creditor, a mechanic's lien, which would run in

favor of A.W.D. and not Fifth Third, would not have run in favor of a *creditor.* There would have been no security interest in favor of a creditor to be disclosed . . . .

622 F.2d at 252 (emphasis in original). The fact situation outlined in the court's hypothetical matches that present in the case at bar. Thus, defendant was under no obligation to reveal Home Roofing's security interest.

■ Plaintiff's argument on the disclosure of security interest issue dovetails with her position on whether Home Roofing was an "arranger of credit" pursuant to § 1602(f) and 12 C.F.R. § 226.2(h). If Home Roofing was an arranger of credit, then it would be a statutorily defined "creditor," § 1602(f). With the existence of multiple creditors, defendant would be required to disclose the possibility of Home Roofing obtaining a mechanic's lien, and the fact that Home Roofing was another creditor. 12 C.F.R. § 226.6(d); *Rudisell v. Fifth Third Bank, supra,* at 253.

The regulations define "arrange for the extension of credit" as follows:

To provide or offer to provide consumer credit or a lease which is or will be extended by another person under a business or other relationship pursuant to which the person arranging such credit or lease
(1) Receives or will receive a fee, compensation, or other consideration for such service, or (2) Has knowledge of the credit or lease terms and participates in the preparation of the contract documents required in connection with the extension of credit or the lease. It does not include

---

**3.** A few courts have suggested that the quoted language from § 1640(f) requires that the party relying on this defense prove "actual reliance" on the FRB interpretation by a "preponderance of the evidence." *See Owens v. Magee Financial Services,* 476 F.Supp. 758, 767 (E.D.La. 1979); *Lewis v. Walker-Thomas Furniture Co.,* 416 F.Supp. 514, 518 (D.D.C.1976). While *some* proof of "actual reliance" may be inferable from the "good faith" statutory language, the legislative history of § 1640(f) is apparently silent on the issue, and the bulk of caselaw on § 1640(f) does not refer to the issue. The

parties have not briefed this issue, although defendant's memoranda specifically indicate the FRB staff interpretations which, defendant says, it relied upon. Such a factual dispute or uncertainty might preclude the granting of summary judgment. In any event, this Court finds it unnecessary to resolve this issue, since defendant's nonliability is sufficiently premised on the substantive provisions of the TILA and the regulations. Reliance on the § 1640(f) defense is not the sole basis for granting defendant's summary judgment motion.

honoring a credit card or similar device where no finance charge is imposed at the time of that transaction.

12 C.F.R. § 226.2(h) (1981).

Plaintiff argues that Home Roofing falls under the second part of the definition. In an affidavit (doc. # 18), plaintiff states that one Eddie Gibbons from Home Roofing "made all the arrangements for the loan, including the refinancing of my old loan and picked" her up and drove her to defendant's place of business, and that she signed the promissory note for defendant "in the presence of Eddie." Defendant does not deny that Mr. Gibbons accompanied plaintiff, but denies any formal or informal relationship with Home Roofing or Mr. Gibbons. Home Roofing, defendant contends, had no knowledge of the credit terms of the loan and Mr. Gibbons did not participate in the preparation of loan documents.

Taking plaintiff's allegations to be true, Home Roofing still does not fall under the definition of "arranger of credit." Plaintiff concedes that Home Roofing received no fee from defendant, precluding the application of 12 C.F.R. § 226.2(h)(1). The second prong of the definition is in the conjunctive: Home Roofing must have had "knowledge of the credit or lease terms" and participated "in the preparation of the credit documents." 12 C.F.R. § 226.2(h)(2). Plaintiff broadly claims that Home Roofing helped "arrange" for the loan, but only specifically states that Mr. Gibbons was with her when she signed the promissory note. She does not claim that he either knew of the credit terms or helped fill out credit documents. Gibbons' activities thus do not satisfy the second prong of the definition.

Both the FRB interpretations and caselaw support this conclusion. In a staff interpretation, the FRB posited a hypothetical similar to the present case (a contractor had contacted the bank and helped fill out loan forms), and held that such conduct does not constitute assisting "in preparation of the contract documents with knowledge of the credit terms." FRB Staff Interpretation, 41 Fed.Reg. 47410 (1976). Defendant claims reliance on this interpretation which, as noted above, precludes liability under the TILA. Moreover, caselaw agrees that informal "help" in filling out forms, without more, will not satisfy the regulation. *Rudisell v. Fifth Third Bank, supra,* at 253; *Gerasta v. Hibernia National Bank,* 411 F.Supp. 176, 186 (E.D.La.1976), *aff'd in part, rev'd in part on other grounds,* 575 F.2d 580 (5th Cir. 1978).[4]

### 3. Failure to Disclose Acceleration Clause

■ Finally, plaintiff argues that defendant's failure to disclose the existence of the promissory note's acceleration clause on the face of the loan violated § 1638(a)(10) of the TILA, which compels disclosure of any "security interest" retained by the creditor. However, the Supreme Court recently held that the TILA does not require disclosure of acceleration clauses. *Ford Motor Credit Co. v. Milhollin, supra,* 444 U.S. at 570, 100 S.Ct. at 799. Plaintiff's third argument is thus without merit.

Having found that no disputed issues of fact exist and that defendant is entitled to judgment as a matter of law, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted.

### III. PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM

■ As indicated above, defendant filed a counterclaim in this action for the balance due on the loan, based on plaintiff's failure to maintain payments on the loan. Since this Court will grant defendant's motion for

---

4. While the 1980 Act or its attendant regulations are not yet in effect, *see* note 1, *supra,* it is interesting to note that the 1980 Act considerably restricts the definition of "creditor," 1980 Act, Title VI, § 602(a), while the new regulations have in turn adopted a restrictive definition of "arranger of credit," under which Home Roofing would not fit. 46 Fed.Reg. 20893 (1981). The changes were made to eliminate "confusion under the current act." S.Rep.No.96–368, 96th Cong., 2d Sess. 24 (1980), *reprinted in* [1980] U.S.Code Cong. & Adm.News 236.

summary judgment, thus granting judgment to defendant on the plaintiff's complaint, it must be determined whether jurisdiction over the counterclaim will be retained. The resolution of this question turns on the characterization of the counterclaim. A federal court has ancillary jurisdiction over *compulsory* counterclaims, while *permissive* counterclaims must be dismissed unless they independently satisfy federal jurisdictional requirements. *City of Cleveland v. Cleveland Electric Illuminating Co.*, 570 F.2d 123, 126–27 (6th Cir. 1978); *Whigham v. Beneficial Finance Co.*, 599 F.2d 1322, 1323 (4th Cir. 1979); 3 Moore's *Federal Practice,* ¶ 13.15[1] (1980). It is conceded that defendant's counterclaim is not based on an independent ground of federal jurisdiction. Thus, the counterclaim must be dismissed if it is found to be permissible.

Under the Federal Rules of Civil Procedure, a compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ." Fed.R.Civ.P. 13(a). In contrast, a permissive counterclaim is a "claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed.R.Civ.P. 13(b). This Circuit determines whether a counterclaim "arises out of" a transaction by examining if policies of judicial economy and doing complete justice will be served by entertaining the counterclaim, and if a "logical relationship" exists between plaintiff's claim and the counterclaim. *City of Cleveland v. Cleveland Electric Illuminating Co., supra*, at 127.

▮ Based on similar criteria, numerous courts have examined whether a counterclaim for a balance due on a loan in a TILA suit is compulsory or permissive.[5] Those courts holding for a compulsory status have found that the claims are interrelated, derived from a common factual basis and,

therefore, are "logically related." *See, e. g., Plant v. Blazer Financial Services, supra*, at 1363–64. Those courts holding for a permissive status have emphasized that while a literal application of Rule 13(a) would suggest an opposite result, a compulsory status for counterclaims would impair enforcement of the TILA by deterring plaintiffs through the threat of large counterclaims and by entangling federal courts in state law issues. *See, e. g., Peterson v. United Accounts, Inc.*, 638 F.2d 1134, 1137 (8th Cir. 1981); *Valencia v. Anderson Bros. Ford*, 617 F.2d 1278, 1290–92 (7th Cir. 1980), *rev'd on other grounds,* —— U.S. ——, 101 S.Ct. 2266, 68 L.Ed.2d 783 (1981).

The trend of decisions on this issue follows the latter course, which this Court finds persuasive. The only connection between a TILA claim and a debt counterclaim is the execution of the loan document. Resolution of the claims will be governed by federal and state law, respectively. Moreover, a TILA suit can often be resolved by an examination of the face of the loan document, presenting an appropriate case for summary judgment. A debt counterclaim, on the other hand, can raise a full range of state law contract issues only resolvable at trial. Thus the judicial economy concerns underlying Rule 13(a) can be thwarted by joinder of two essentially unrelated claims. *Valencia v. Anderson Bros. Ford, supra.* Therefore, this Court holds that defendant's counterclaim is permissive and not within the jurisdiction of this Court once judgment is granted to the defendant on plaintiff's claim. Even if the counterclaim were found to be compulsory, a persuasive case for dismissal could be presented. A number of courts have held that compulsory counterclaims can be dismissed as an exercise of the court's *discretion* to decline ancillary jurisdiction. *See Harris v. Steinem*, 571 F.2d 119, 122–23 (2d Cir. 1978); *National Research Bureau v. Bartho-*

---

5. The cases are collected in *Whigham v. Beneficial Finance Co., supra*, at 1323–24 n.*; *Plant v. Blazer Financial Services, Inc.*, 598 F.2d 1357, 1363 nn.10, 11 (5th Cir. 1979). The only decision within the Sixth Circuit has held the counterclaim to be permissive. *Buehler v. Citi-*

*zens Fidelity Bank & Trust Co.*, 22 Fed.Rules Serv.2d 37 (W.D.Ky.1976). *See generally,* Note, *Truth-in-Lending Act—Defendants Debt Counterclaim—Compulsory or Permissive?*, 28 Case W.Res.L.Rev. 434 (1978).

*lomew*, 482 F.2d 386, 388 (3rd Cir. 1973); 3 Moore's *Federal Practice*, ¶ 13.15[1] at 13–382 (1980). These courts have derived this discretion by analogy to a court's discretion to dismiss pendent[6] state law claims if federal claims are dismissed prior to trial. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Given that plaintiff's claim in this case was resolved by summary judgment against her at the pleading stage, this court would find it appropriate to dismiss defendant's state law counterclaim, even if said counterclaim was deemed to be compulsory in nature.

WHEREFORE, defendant's motion for summary judgment is well taken and the same is hereby granted, for the reason that no genuine issue of material fact exists on the question of whether the defendant has violated any provision of the TILA. The Court concludes that no such violation has taken place. Plaintiff's motion for summary judgment is hereby denied for the same reason. Plaintiff's motion to dismiss defendant's counterclaim is hereby granted for the reason that the counterclaim is permissive. Given that both the claim and counterclaim are dismissed, the Court holds that plaintiff's motion to compel discovery is rendered moot and will not be ruled upon.

Judgment is accordingly entered in favor of the defendant and against the plaintiff on the defendant's motion for summary judgment.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

---

6. A pendent claim is an action without an independent federal jurisdictional basis, brought by a party who is also asserting a substantial federal claim. In contrast, ancillary jurisdiction pertains to claims asserted after the main complaint, usually by litigants other than plaintiff, such as counterclaims. *Harris v. Steinem, supra*, at 122 n.7.