MIRKIN, BARRE, SALTZSTEIN, GORDON, HERMANN & KREISBERG, P. C., et al., Plaintiffs,

v.

Anthony NOTO individually, and in his official capacity as Suffolk County Legislator and in his capacity as Trustee of the Suffolk County Civil Service Employees Association Welfare Fund, et al., Defendants.

Frank GIORDANO, et al., First Counterclaim Plaintiffs,

v.

MIRKIN, BARRE, SALTZSTEIN, GORDON, HERMANN & KREISBERG, P. C., et al., First Counterclaim Defendants.

Joseph FASBACH, Susan Gagen and William Lewis, Second Counterclaim Plaintiffs,

v.

Anthony NOTO individually, and in his official capacity as Suffolk County Legislator and in his capacity as Trustee of the Suffolk County Civil Service Employees Association Benefit Fund, et al., Second Counterclaim Defendants.

No. 79 Civ. 2589.

United States District Court, E. D. New York.

May 13, 1982.

---

4. Devine counterclaimed against Statewide for unpaid commissions.

George R. Osborne, New York City, for plaintiffs.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Trustees of the Funds (Fund defendants).

Joseph H. Fasbach, Susan Gagen, William Lewis, pro se.

GLASSER, District Judge:

The initial complaint in this action was filed on behalf of the members of the law firm of Mirkin, Barre, Saltzstein, Gordon, Hermann & Kreisberg, P. C. ("Mirkin Barre"), against various officials involved in the administration or investigation of the Suffolk County Civil Service Employees Association ("CSEA") Welfare Fund and Legal Services Fund. Mirkin Barre had been retained by the CSEA Legal Services Fund to provide prepaid legal services to CSEA members, but was discharged after an investigation by a special committee of Suffolk County legislators found that the firm had engaged in overcharging and other unprofessional conduct. The original complaint alleged that the defendants, acting under color of law, had conspired to damage the reputation of Mirkin Barre and to in-

duce the Legal Services Fund to breach its retainer agreement with Mirkin Barre, in violation of the plaintiffs' constitutional and statutory rights. This complaint was dismissed on May 20, 1981, for failure to comply with the Court's discovery orders.[1]

Prior to dismissal, certain defendants, who were trustees of the Funds ("Fund defendants"), counterclaimed against Mirkin Barre, and joined Joseph Fasbach, Susan Gagen and William Lewis as counterclaim defendants. These three individuals were trustees of the Funds who had not been named as defendants in the original complaint.[2] The Fund defendants alleged that these three individuals had conspired with Mirkin Barre to enable it to obtain lavish retainer agreements whereby it would be the sole provider of prepaid legal services to CSEA members. The Fund defendants also sought contribution from Fasbach, Gagen and Lewis in the event that they were found liable to Mirkin Barre in the underlying action. Jurisdiction over the counterclaims was predicated on the statement that "[a]n independent basis for federal jurisdiction is unnecessary because these compulsory counterclaims are brought under the court's ancillary jurisdiction."

The three individual counterclaim defendants, appearing *pro se*, responded by counterclaiming against the Fund defendants. These counterclaims alleged, in essence, that the Fund defendants had conspired to injure the *pro se* defendants, and had breached their fiduciary duty to the Funds by, among other things, conspiring to use Fund assets for personal purposes. The *pro se* counterclaims also invoked the court's ancillary jurisdiction.

The Fund defendants subsequently moved to dismiss the *pro se* counterclaims, on the grounds that the court lacked subject matter jurisdiction and that the *pro se* counterclaimants failed to state a claim upon which relief could be granted. This Court, on February 5, 1982, dismissed the *pro se* counterclaims for failure to state a claim upon which relief could be granted, but allowed the *pro se* counterclaimants thirty days to replead with more specificity. An amended complaint was filed within this period.

The Court now has before it cross-motions to dismiss the counterclaims of both the Fund defendants and the *pro se* counterclaimants. The Fund defendants, once again, argue that the court lacks subject matter jurisdiction over the counterclaims brought against them, and that the allegations of the counterclaims fail to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12(b)(1) and (6). The *pro se* counterclaimants argue that the court lacks subject matter jurisdiction over the Fund defendants' counterclaims. For the reasons set forth below, the counterclaims of both parties are dismissed without prejudice.

*Discussion*

## I.

■ The counterclaims at issue here are predicated upon the Court's ancillary jurisdiction. It is settled law that the district court's ancillary jurisdiction extends only to compulsory counterclaims, and that an independent jurisdictional basis must exist for permissive counterclaims. *See Federman v. Empire Fire and Marine Ins. Co.*, 597 F.2d 798, 812 (2d Cir. 1979); *Harris v. Steinem*, 571 F.2d 119, 121–22 (2d Cir. 1978); *Newburger, Loeb & Co. Inc. v. Gross*, 563 F.2d 1057, 1070–71 (2d Cir. 1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978). Hence, the threshold issue is whether these counterclaims are compulsory or permissive in nature.

Rule 13(a), Fed.R.Civ.P., defines a compulsory counterclaim as one that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ." In this Circuit it must be deter-

---

1. Although the plaintiffs have subsequently moved to vacate this dismissal, the action at this time stands dismissed.

2. The joinder of these three parties was proper pursuant to Fed.Civ.Pro. 13(h). The Fund defendants also raised counterclaims against Mirkin Barre alone, alleging essentially breach of fiduciary duty and legal malpractice.

mined, on the basis of the pleadings, "whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978). *Accord, Crouse-Hinds Co. v. Internorth, Inc.*, 634 F.2d 690, 700 (2d Cir. 1980).

An analysis of the cases reveals that a flexible approach has been adopted in determining whether a counterclaim is compulsory or permissive. A recent Second Circuit case summarized the various tests that have been applied and concluded:

> The factors most generally considered by these tests as indicators of the compulsory nature of a claim are: (1) identity of facts between original claim and counterclaim; (2) mutuality of proof; (3) logical relationship between original claim and counterclaim. Although these factors or tests may be indicative in one sense or another of the compulsory character of a counterclaim, no one of them is conclusive, and should not be relied upon exclusively.

*Federman v. Empire Fire and Marine Ins. Co.*, 597 F.2d 798, 811–12 (2d Cir. 1979).

■ Turning to the counterclaims brought by the Fund defendants, this Court concludes that they are compulsory in nature. These claims allege a conspiracy between Mirkin Barre and Fasbach, Gagen, and Lewis to control the Welfare and Legal Services Funds for the purpose, among others, of obtaining lavish retainer agreements for Mirkin Barre. These allegations are logically related to the initial action brought by Mirkin Barre, which alleged that the defendants had conspired to breach the retainer agreement and to damage the reputation of Mirkin Barre by accusing them of improper conduct. Since the Fund defendants' counterclaims involve the reasons why Mirkin Barre was discharged by the Legal Services Fund, the facts in issue and the proof at trial would likely overlap with the Fund defendants' defense against the initial complaint. This logical and factual nexus between the two causes of action is sufficient to constitute the Fund defendants' counterclaims as compulsory.[3]

■ After a thorough analysis of the *pro se* counterclaims, however, this Court concludes that they are permissive in nature. While the initial complaint and the Fund defendants' counterclaims concern the relationship between Mirkin Barre and the CSEA Legal Services and Welfare Funds, the *pro se* counterclaims only tangentially concern this relationship. Rather, the *pro se* counterclaims allege a series of independent acts by which the Fund defendants allegedly breached their fiduciary duty to the Funds. In fact, the *pro se* counterclaims barely make reference to Mirkin Barre, and what few references are made do not involve the law firm's retention, conduct or discharge. Instead of common issues of fact predominating, the allegations contained in the *pro se* counterclaims require entirely distinct proof at trial from that involved in the Fund defendants' counterclaims or the underlying complaint. Because of the absence of a logical or factual nexus between the counterclaims of the Fund defendants and *pro se* counterclaimants, considerations of "judicial economy and fairness" do not dictate that the issues be resolved in one lawsuit. *See Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978). Hence, the *pro se* counterclaims are permissive in nature and must be dismissed unless an independent jurisdictional basis has been properly pleaded.

Although the *pro se* counterclaimants argue that an independent jurisdictional basis is present, a review of the complaint reveals that no federal question is properly raised. The only reference to federal law contained in the *pro se* counterclaims is embodied in paragraph 49, wherein the *pro se* counterclaimants allege that the Fund defendants "conspired among themselves and with others to deprive Fasbach, Gagen and Lewis of their legal and civil rights" as provided by the Constitution and the laws of the United

---

**3.** This "logical connection" exists as to the counterclaims brought against Mirkin Barre alone as well, and hence they are compulsory in nature.

States. Although a *pro se* complaint should be held to a less stringent standard than pleadings drafted by lawyers, *see Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), this conclusory allegation, by itself, is insufficient to invoke federal jurisdiction.

The *pro se* counterclaimants fail to plead any facts indicating that they have suffered a constitutional deprivation. Rather, their claims appear to be grounded in traditional principles of tort law. Because of the absence of specific factual allegations supporting the claimed constitutional deprivation, the counterclaimants fail to properly plead a civil rights cause of action. *See Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir. 1981) (a claim of conspiracy to violate civil rights must contain a "detailed fact pleading"); *Fine v. City of New York*, 529 F.2d 70, 73 (2d Cir. 1975) ("Complaints relying upon 42 U.S.C. § 1981 et seq. are plainly insufficient unless they contain at least some allegations of facts indicating a deprivation of civil rights"); *Powell v. Jarvis*, 460 F.2d 551, 553 (2d Cir. 1972); *Metcalf v. Ogilvie*, 436 F.2d 361, 363 (7th Cir. 1970) ("In order to state a cause of action under the Federal Civil Rights Act, a complaint must set forth more than bare unsupported conclusionary allegations in support of constitutional deprivation"); *Young v. Harris*, 509 F.Supp. 1111, 1114 (S.D.N.Y.1981); *Landesman v. City of New York*, 501 F.Supp. 837, 839 (E.D.N.Y.1980) ("A civil rights complaint must contain more than 'conclusory,' 'vague,' or 'general allegations' of constitutional deprivation"). Since no independent jurisdictional basis has been properly pleaded, the *pro se* counterclaims must be dismissed.

## II.

Although it has been determined that the Fund defendants' counterclaims are compulsory in nature and thus within the Court's ancillary jurisdiction, this conclusion does not end the inquiry as to these counterclaims. Still remaining is the question of whether such jurisdiction should be retained now that the underlying action upon which this jurisdiction is premised has been dismissed.

If the underlying complaint in the instant action had been dismissed for lack of subject matter jurisdiction, any counterclaims brought pursuant to the Court's ancillary jurisdiction would have to be dismissed as well. *See DHL Corporation v. Loomis Courier Service, Inc.*, 522 F.2d 982 (9th Cir. 1975); *United States v. Gregor J. Schaefer Sons, Inc.*, 272 F.Supp. 962 (E.D.N.Y.1967); 6 C. Wright & A. Miller, *Federal Practice & Procedure*, § 1414 at p. 79 (1971) ("[O]nce the court determines that there is no federal jurisdiction over plaintiff's claim, there is nothing to support ancillary jurisdiction over the counterclaim"). In the instant action, however, the underlying complaint was dismissed for failure to comply with the court's discovery orders, prior to any final adjudication on the question of whether federal jurisdiction was properly invoked.[4]

Numerous cases have held that once ancillary jurisdiction over a compulsory counterclaim has attached, the power of a federal court to adjudicate the counterclaim is not affected by a subsequent dismissal of the underlying complaint on nonjurisdictional grounds. *See Moore v. New York Cotton Exchange*, 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed.2d 750 (1926); *Pipeliners Local Union No. 798 v. Ellend*, 503 F.2d 1193, 1199 (10th Cir. 1974); *Koufakis v. Carvel*, 425 F.2d 892, 900 (2d Cir. 1970); 6 C. Wright & A. Miller, *Federal Practice & Procedure*, § 1414 at p. 78 (1971). It also has been held, however, that the court may, in its discretion, dismiss a compulsory counterclaim after the underlying action has been dismissed for nonjurisdictional reasons. *National Research Bureau, Inc. v. Bartholomew*, 482 F.2d 386, 389 (3d Cir. 1973); *Stewart v. Dollar Federal Savings and Loan Association*, 523 F.Supp. 218 (S.D. Ohio 1981); *Great Horizons Development Corp. v. Massachusetts Mutual Life Ins. Co.*,

4. In fact, the Fund defendants in their answer and at oral argument have maintained that the underlying complaint does not provide a basis for federal subject matter jurisdiction.

457 F.Supp. 1066, 1081–82 (N.D.Ind.1978) *aff'd without opinion*, 601 F.2d 596 (7th Cir. 1979); *Wetherington v. Phillips*, 380 F.Supp. 426 (E.D.No. Carolina 1974), *aff'd without opinion*, 526 F.2d 591 (4th Cir. 1975); *United States v. Gregor J. Schaefer Sons, Inc.*, 272 F.Supp. 962 (E.D.N.Y.1967). These cases have derived this discretionary power primarily from the Supreme Court's opinion in *U. M. W. v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), wherein the Court in discussing the power of the federal courts to hear pendent state claims [5] made the following observations:

> "[If] considerations of judicial economy, convenience and fairness to litigants ... are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139 (footnotes and citations omitted).

Analogizing to *Gibbs*, these cases have declined to exercise ancillary jurisdiction over compulsory counterclaims after the underlying complaint has been dismissed.

The Fund defendants argue that *Gibbs* is inapplicable because it concerned pendent as opposed to ancillary jurisdiction. Unlike pendent jurisdiction, ancillary jurisdiction involves claims that are mandatory by virtue of Fed.R.Civ.P. 13(a). The Fund defendants argue that since they have been required to bring these claims by virtue of the Federal Rules, the Court has an implied obligation to retain jurisdiction over their claims even though the underlying action has now been dismissed. This argument was noted, without comment, by the Second Circuit in *Harris v. Steinem*, 571 F.2d 119, 122–23 (2d Cir. 1978).[6]

■ This Court does not find the argument advanced by the Fund defendants so compelling as to justify a blanket rule requiring a district court to retain ancillary jurisdiction whenever the underlying complaint in an action has been dismissed. Such an unyielding rule would be in conflict with the Supreme Court's admonition in *Gibbs* that principles of comity require a federal court to avoid exercising jurisdiction over state claims "[if] considerations of judicial economy, convenience and fairness to litigants ... are not present." Rather than adopt such a rule, this Court believes that the mandatory nature of a counterclaim should be merely one factor to be evaluated in considering whether retaining jurisdiction would serve the interests of "judicial economy, convenience and fairness to litigants."

On the basis of this reasoning, as well as the earlier cited precedent, this Court concludes that it does possess discretionary authority to dismiss ancillary claims once the underlying complaint in an action has been dismissed. Further, the Court concludes that under the circumstances of this case it should decline to retain jurisdiction over the Fund defendants' counterclaims.

Since the underlying complaint in this action has been dismissed, no "judicial economy" or "convenience" would be served by permitting the Fund defendants access to a federal forum on their purely state law claims. Further, since the Fund defend-

---

**5.** The distinction between pendent and ancillary jurisdiction was explained in *Harris v. Steinem*, 517 F.2d 119, 122 n.7 (2d Cir. 1978), as follows:

> "A pendent claim is a cause of action without independent federal jurisdictional basis, brought by a party who is also asserting a substantial federal claim. The pendent and federal claims must share 'a common nucleus of operative fact.' ... In contrast, ancillary jurisdiction is generally said to pertain to claims asserted after the main complaint, usually by litigants other than plaintiff, such as counterclaims within the purview of Rule 13(a)." (citations omitted)

**6.** In *Harris* the Second Circuit avoided this issue by finding that the counterclaims in question were permissive in nature and thus required an independent jurisdictional basis.

ants' counterclaims have progressed only to the early stages of discovery, little duplication of effort, if any, would be required in bringing this action in state court. Thus, dismissing the action is not in any way unfair to the Fund defendants.[7]

Given the present status of the case, and bearing in mind the Supreme Court's admonition in *Gibbs*, this Court declines to exercise continued jurisdiction over the Fund defendants' counterclaims.[8]

The cross-motions to dismiss are granted.

SO ORDERED.

**7.** If the underlying complaint in the instant case had been dismissed after prosecution of the Fund defendants' counterclaims had progressed substantially further, this Court would have been more inclined to retain jurisdiction in the interest of "fairness to litigants." *Cf. U. M. W. v. Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139.

**8.** This disposition applies to the Fund defendants' counterclaims against Mirkin Barre alone as well. Of course, should the underlying complaint in the instant action be reinstated, the Fund defendants would be free to reassert all of their counterclaims.