Elizabeth Forsling HARRIS, Plaintiff-Appellee,

v.

Gloria STEINEM, Patricia Carbine and Ms. Magazine Corp., Defendants-Appellants.

No. 536, Docket 77-7485.

United States Court of Appeals, Second Circuit.

Argued Jan. 11, 1978.

Decided Feb. 17, 1978.

Elizabeth Forsling Harris, plaintiff-appellee, pro se.

Philip Mandel, New York City (Golden, Wienshienk & Mandel, Marc Owen Mandel, New York City, of counsel), for defendants-appellants.

Before FEINBERG and OAKES, Circuit Judges, and WYATT, District Judge.*

FEINBERG, Circuit Judge:

Appellants Gloria Steinem, Patricia Carbine and Ms. Magazine Corp. (Ms. Magazine) seek to overturn an order by Judge Gerard L. Goettel in the United States District Court for the Southern District of New York dismissing without prejudice their counterclaims for libel against appellee Elizabeth Forsling Harris, who appears pro se. Since we find that the counterclaims were permissive within the meaning of Federal Rule of Civil Procedure 13(b), the district court's order of dismissal for lack of jurisdiction is affirmed.

* Of the United States District Court for the Southern District of New York, sitting by designation.

## I

The individual appellants and appellee Harris were the founders and original owners of Ms. Magazine. In early 1972, Harris sold a substantial portion of her stock back to Ms. Magazine. Thereafter, Ms. Magazine apparently concluded negotiations to sell a sizeable block of its stock to a prominent company, thereby enhancing the value of previously issued Ms. Magazine stock. In June 1975, Harris sued appellants in the district court, alleging that they had violated the securities laws when her stock was repurchased over three years earlier.[1] The gravamen of Harris's complaint was that appellants had failed to disclose to her their material ongoing negotiations with an outside investor. These undisclosed transactions were further alleged to have "significantly increased the value" of the stock sold. In their answer, appellants denied these contentions, and counterclaimed for libel based both on the complaint itself, which was alleged to have been "brought maliciously," and also on several subsequent published statements of Harris concerning her lawsuit. Appellee Harris generally denied the allegations of the counterclaims and specifically contended that her responses to reporters' inquiries "referred solely to the allegations contained in the Complaint which was . . . a matter of public record."

Initially, pre-trial discovery proceeded smoothly, but in May 1976, Judge Goettel found it necessary to orally order Harris to "appear for continuation of her deposition on or before June 20, 1976." When this order was ignored, Judge Goettel issued a written order similarly directing Harris to appear on or before July 22, 1976. Again Harris failed to comply,[2] and in August 1976 Judge Goettel properly dismissed her complaint with prejudice. Although this last order specifically retained jurisdiction over the counterclaims, the judge subsequently decided that he should dismiss the counterclaims as well. In a memorandum opinion, filed in August 1977, the judge held that the early dismissal of the complaint warranted the discretionary dismissal of what he perceived to be compulsory counterclaims. This appeal followed.

## II

 With certain exceptions,[3] Rule 13(a) requires a litigant to "state as a counterclaim any claim . . . if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ."[4] Such counterclaims are denominated compulsory, and no independent basis of federal jurisdiction is needed for the court to adjudicate the ancillary issues thus raised, if the main claim itself presents

1. Harris's complaint based jurisdiction on the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, with pendent jurisdiction, see note 7 infra, over three common law causes of action. No diversity jurisdiction existed under 28 U.S.C. § 1332 since all parties were citizens of New York. (Appellant Ms. Magazine is a Delaware corporation, but its principal place of business is New York, see 28 U.S.C. § 1332(c)).

2. Appellee specifically stated through her lawyers that she no longer wished to prosecute her claims.

3. The Rule itself excepts four types of counterclaims: (a) claims that have not matured at the time of pleading, (b) claims whose adjudication requires the presence of third parties not subject to the jurisdiction of the court, (c) claims that are the subject of a pending suit at the time the main action was filed, and (d) claims where the main action is proceeding without personal jurisdiction over the defendant, i. e.,

quasi in rem jurisdiction. See generally 3 Moore's Federal Practice ¶ 13.14 (2d ed. 1974).

4. Rule 13(a) provides:

 *Compulsory Counterclaims.* A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating. any counterclaim under this Rule 13.

a colorable federal issue. See, e. g., *Moore v. New York Cotton Exchange*, 270 U.S. 593, 609, 46 S.Ct. 367, 70 L.Ed. 750 (1926); *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n. 1, 94 S.Ct. 2504, 41 L.Ed.2d 243 (1974). See also 3 Moore's Federal Practice ¶ 13.15[1] (2d ed. 1974). Moreover, a compulsory counterclaim, unless specifically excepted, must be pleaded or be forever barred. See, e. g., *Baker v. Gold Seal Liquors, Inc.*, supra, 417 U.S. at 469 n. 1, 94 S.Ct. 2504; *Pipeliners Local Union No. 798 v. Ellerd*, 503 F.2d 1193, 1198 (10th Cir. 1974).[5] The Federal Rules of Civil Procedure also allow a litigant to assert any non-compulsory counterclaim he has against the opposing party. Fed.R.Civ.P. 13(b).[6] Such unrelated counterclaims are referred to as permissive, since a party need not plead them, but instead may bring a separate action on the claim in the forum of his own choosing. If a permissive counterclaim is raised in a federal district court, however, an independent jurisdictional ground is required, see *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 341 (7th Cir.), cert. denied, 419 U.S. 1070, 95 S.Ct. 657, 42 L.Ed.2d 666 (1974); *United States v. Heyward-Robinson Co.*, 430 F.2d 1077, 1080–81 (2d Cir. 1970), cert. denied, 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971).

■■■ As indicated above, Judge Goettel viewed appellants' counterclaims as compulsory, but held that in light of the early pre-trial dismissal of the main action, the counterclaims should be dismissed without prejudice as an exercise of the court's discretion to decline ancillary jurisdiction. A district court may decline to exercise its jurisdiction over *pendent* claims,[7] see *United Mine Workers v. Gibbs*, supra, 383 U.S. at 726–29, 86 S.Ct. 1130, and trial judges have been told that "[c]ertainly, if the federal claims are dismissed before trial . . . the [pendent] state claims should be dismissed as well." Id. at 726, 86 S.Ct. at 1139. Analogizing to *Gibbs* and its progeny, several decisions have concluded that federal courts possess similar discretion to dismiss compulsory counterclaims based on *ancillary* jurisdiction alone.[8] See *National Research Bureau, Inc. v. Bartholomew*, 482 F.2d 386, 388 (3d Cir. 1973); *Wetherington v. Phillips*, 380 F.Supp. 426, 429 (E.D.N.C. 1974), aff'd mem., 526 F.2d 591 (4th Cir. 1975); *United States v. Gregor J. Schaefer Sons, Inc.*, 272 F.Supp. 962, 964–65 (E.D.N.Y.1967). The last two cases were relied on by Judge Goettel to support his discretionary dismissal of what he characterized as appellants' compulsory counterclaims.

Appellants agree with the district court that their counterclaims were compulsory, but strongly urge that a *Gibbs* analysis is inappropriate here. Pointing out that the plaintiff in *Gibbs* brought parallel claims in the federal forum of his choice, appellants emphasize that, as defendants, they have

---

5. There is some disagreement as to the nature of the bar, that is, whether it is an estoppel, waiver, or bar in the nature of *res judicata*. See Wright, Estoppel By Rule: The Compulsory Counterclaim Under Modern Pleading, 38 Minn.L.Rev. 423, 428–31 (1954).

6. Rule 13(b) provides:
 Permissive Counterclaims. A pleading may state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim.

7. A pendent claim is a cause of action without independent federal jurisdictional basis, brought by a party who is also asserting a substantial federal claim. The pendent and federal claims must share "a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). Thus, for instance, pen-

dent jurisdiction existed over Harris's state law claims since the circumstances of the stock sale constituted a common nucleus of operative fact linking federal and state claims. See Note 1 supra. In contrast, ancillary jurisdiction is generally said to pertain to claims asserted after the main complaint, usually by litigants other than plaintiff, such as counterclaims within the purview of Rule 13(a). See Comment, *Aldinger v. Howard* and Pendent Jurisdiction, 77 Colum.L.Rev. 127, 128 n. 5 (1977).

8. Conversely, a district court may in proper circumstances retain its jurisdiction and adjudicate the merits of the compulsory counterclaim even though the main claim has been dismissed. See *Moore v. New York Cotton Exchange*, supra, 270 U.S. at 607–09, 46 S.Ct. 367; *Koufakis v. Carvel*, 425 F.2d 892, 900 (2d Cir. 1970).

been dragged into a court not of their own choosing and have been forced by Rule 13(a) to plead their counterclaims. Appellants further contend that *Gibbs* is inapplicable because the mandatory language of Rule 13(a), which requires a party to raise compulsory counterclaims, imposes a parallel duty on the federal courts to hear them.[9] Although these are intriguing questions,[10] we need not resolve them, because we do not agree with the major premise of appellants' arguments, namely, that their counterclaims are compulsory within the meaning of Rule 13(a).

### III

■ The operative language of Rule 13, which differentiates compulsory from permissive counterclaims, reads as follows: "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . ." Although courts and commentators have formulated various tests to determine what constitutes the same "transaction or occurrence," [11] this circuit, relying on the Supreme Court's interpretation of Rule 13's predecessor,[12] has long looked to the "logical relationship" between the claim and the counterclaim.[13] This flexible approach to Rule 13 problems attempts to analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit. See *Columbia Plaza Corp. v. Security National Bank,* supra, 173 U.S.App.D.C. at 408–09, 525 F.2d at 625–26; *United States v. Heyward-Robinson Co.,* supra, 430 F.2d at 1081–82; *Great Lakes Rubber Corp. v. Herbert Cooper Co.,* supra, 286 F.2d at 634. Thus, precise identity of issues and evidence between claim and counterclaim is not required. See, e. g., *Moore v. New York Cotton Exchange,* supra, 270 U.S. at 610, 46 S.Ct. 367; *United Artists Corp. v. Masterpiece Productions, Inc.,* supra, 221 F.2d at 216. Conversely, at some point the essential facts and "the thrust of the two claims [are] so basically different that such accepted 'tests of compulsoriness' as 'logical relation' [are] not met . . . ." *Ball v. Connecticut Bank and Trust Co.,* 404 F.Supp. 1, 4 (D.Conn.1975).

■ With these considerations in mind, we turn to the facts at bar. Appellee Harris claimed that her sale of stock to appellants in 1972 was fraudulently induced under both state and federal law. Such allegations focus on the details of the negotiations and the material financial information about Ms. Magazine known to the individu-

9. Appellants also argue that, assuming that the district court had discretion to decline jurisdiction, dismissal was an abuse of discretion.

10. Compare 3 Moore's Federal Practice ¶ 13.-15[1], at 13–382 to –383 (2d ed. 1974) (discretion to dismiss compulsory counterclaim apparently thought to exist) and Comment, Pendent and Ancillary Jurisdiction: Towards a Synthesis of Two Doctrines, 22 U.C.L.A.L.Rev. 1263, 1284–86 (1975) with P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart and Wechsler's The Federal Courts and the Federal System 925 (2d ed. 1973) (questioning whether the considerations regarding parallel claims and counterclaims are the same).

11. Other suggested tests exclusively focus on the overlap of issues, facts or evidence between the original claim and the counterclaim, or the res judicata effect, Rule 13(a) aside, of a judgment against the counterclaimant in the main action. See generally Wright, Estoppel By Rule, supra note 5, at 437–45; see also, *Pipeliners Local Union No. 798 v. Ellerd,* supra, 503 F.2d at 1198–99; *United States v. Chatham,* 415 F.Supp. 1214, 1217 (N.D.Ga.1976).

12. See *Moore v. New York Cotton Exchange,* supra, 270 U.S. at 610, 46 S.Ct. 367; see also *Baker v. Gold Seal Liquors, Inc.,* supra, 417 U.S. at 469 n. 1, 94 S.Ct. 2504.

13. See, e. g., *United States v. Heyward-Robinson Co.,* 430 F.2d 1077, 1081 (2d Cir. 1970); *Koufakis v. Carvel,* supra, 425 F.2d at 899; *United Artists Corp. v. Masterpiece Productions, Inc.,* 221 F.2d 213, 216 (2d Cir. 1955); *Lesnik v. Public Industrials Corp.,* 144 F.2d 968, 975 (2d Cir. 1944).

Other circuits appear to follow the same analysis, see, e. g., *Columbia Plaza Corp. v. Security National Bank,* 173 U.S.App.D.C. 403, 408, 525 F.2d 620, 625 (1975); *Diamond v. Terminal Ry. Ala. State Dock,* 421 F.2d 228, 236 (5th Cir. 1970); *Kissel Co. v. Farley,* 417 F.2d 1180, 1183 (7th Cir. 1969); *Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631, 634 (3d Cir. 1961).

al appellants and not disclosed to Harris at the time of the transaction complained of. In contrast, appellants' counterclaim was based on the filing of the complaint in 1975 and the "even more remote" subsequent publicity surrounding the suit. *Bose Corp. v. Consumers Union of the United States, Inc.*, 384 F.Supp. 600, 602 (D.Mass.1974). While it is true that Harris's success on the main claim would probably have defeated the counterclaim,[14] essential issues in the counterclaim might well have included (1) whether appellants were "public figures" within the ambit of *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 154–55, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), and later New York defamation cases such as *James v. Gannett Co.*, 40 N.Y.2d 415, 386 N.Y.S.2d 871, 353 N.E.2d 834 (1976), (2) if so, whether Harris's alleged libel was made with her "knowledge that it was false or with reckless disregard of whether it was false or not," *New York Times v. Sullivan*, 376 U.S. 254, 280, 84 S.Ct. 710, 726, 11 L.Ed.2d 686 (1964), and if appellants were not public figures, whether such publications were made in a "grossly irresponsible manner," *Chapadeau v. Utica Observer-Dispatch, Inc.*, 38 N.Y.2d 196, 199, 379 N.Y.S.2d 61, 341 N.E.2d 569 (1975), and (3) whether the publications were privileged as either court pleadings, see *People ex rel. Bensky v. Warden of the City Prison*, 258 N.Y. 55, 179 N.E. 257 (1932), or as accurate reports of judicial proceedings, see N.Y.Civ. Rights Law § 74. It is thus apparent that the logical relationship between Harris's complaint and appellants' counterclaims is at best attenuated.

14. It is conceivable, although unlikely, that Harris could have won on the merits of her complaint but lost on the counterclaim, if the alleged libelous statements concerned matters other than the stock sale.

15. But cf. *Mennen Co. v. Krauss Co.*, 37 F.Supp. 161, 164 (E.D.La.1941), rev'd on other grounds, 134 F.2d 348 (5th Cir. 1943) (under Louisiana law, libel counterclaim based on defamatory pleadings may not be sued upon until after proceedings terminated).

16. Cases involving counterclaims based on libelous publications contemporaneous with the transaction complained of in the main suit, see, e. g., *Independence Tube Corp. v. Copperweld*

In addition, Judge Goettel correctly observed that "the counterclaim, while artfully drafted, in essence is a claim for malicious prosecution" and it is well settled that

[a] claim *in the nature of malicious prosecution*, which arises out of the bringing of the main action, generally cannot be asserted either as a compulsory or a permissive counterclaim, since such a claim is premature prior to the determination of the main action. (Emphasis supplied).

3 Moore's Federal Practice ¶ 13.13, at 13–308 (2d ed. 1974). See also *Solomon v. Bruchhausen*, 305 F.2d 941, 943 (2d Cir. 1962), cert. denied, 371 U.S. 951, 83 S.Ct. 506, 9 L.Ed.2d 499 (1963). Moreover, even if this counterclaim avoids dismissal on grounds of prematurity because it is technically phrased in terms of libel and not malicious prosecution,[15] the case law seems clear that a counterclaim which stems from the filing of the main action and *subsequent* alleged defamations is not a compulsory counterclaim covered by Rule 13(a).[16] See *Wigglesworth v. Teamsters Local Union No. 592*, 68 F.R.D. 609 (E.D.Va.1975); *Bose Corp. v. Consumers Union of the United States, Inc.*, supra; *Fidelity & Casualty Co. of New York v. Coffelt*, 11 F.R.D. 443 (S.D. Iowa 1951) (allegations of pre-complaint libel as well); *Williams v. Robinson*, 1 F.R.D. 211 (D.D.C.1940); cf. also *Aviation Materials, Inc. v. Pinney*, 65 F.R.D. 357 (N.D.Okl. 1975). Indeed, we have previously held that defendants' counterclaim for libel based on two letters which unflatteringly characterized a union shop agreement and which were disseminated *before* and at the time of the complaint was a permissive

*Corp.*, 74 F.R.D. 462, 464–66 (N.D.Ill.1977); *Sun Shipbuilding & Dry Dock Co. v. Virginia Elec. and Power Co.*, 69 F.R.D. 395 (E.D.Pa. 1975), are clearly distinguishable. Nor do we think that *Albright v. Gates*, 362 F.2d 928 (9th Cir. 1966), is necessarily inconsistent with our holding here. In that case plaintiff sued for slander concerning his oil securities sales operation and defendants counterclaimed for the price paid for allegedly worthless securities. Although the precise time sequence is not revealed by the decision, *Gates* did not involve a counterclaim arising only at the time of, and because of, the main suit.

counterclaim in an action by a competing union to declare the union shop agreement invalid under the federal labor laws. See *O'Connell v. Erie Lackawanna Railroad Co.*, 391 F.2d 156, 163 (2d Cir. 1968), vacated as moot, 395 U.S. 210, 89 S.Ct. 1767, 23 L.Ed.2d 213 (1969). Cf. *Solomon v. Bruchhausen*, supra, 305 F.2d at 943.

Based upon the above analysis, we hold that appellants' counterclaims are not compulsory as defined by Rule 13(a). We realize that this Rule should be generously construed, see, e. g., *Columbia Plaza Corp. v. Security National Bank*, supra, 173 U.S. App.D.C. at 408, 525 F.2d at 625, but we regard this case as falling within the well-established narrow line of decisions involving counterclaims based solely on the filing of the main complaint and allegedly libelous publications thereafter. See e. g., *Wigglesworth v. Teamsters Local Union No. 592*, supra; *Bose Corp. v. Consumers Union of the United States, Inc.*, supra; cf. *O'Connell v. Erie Lackawanna Railroad Co.*, supra. Furthermore, we think that postponement of suits that will ordinarily not arise if plaintiff wins the main action and avoidance of the "dangerous potentialities of counterclaims [in the nature of] malicious prosecutions as a defensive strategem," are strong policy reasons supporting that line of cases. Wright, Estoppel By Rule, supra note 5, at 444.

█ Under our earlier decisions, we must dismiss this permissive counterclaim since it is not "supported by independent jurisdictional grounds." [17] *O'Connell v. Erie Lackawanna Railroad Co.*, supra, 391 F.2d at 163; see also *United States v. Heyward-Robinson Co.*, supra, 430 F.2d at 1080–81. Nor do we believe that this is an appropriate case to reconsider whether ancillary jurisdiction should be extended to permissive counterclaims, see id. at 1088–89 (Friendly,

J., concurring), because the early dismissal of the main claim here and the predominance of difficult state law issues as outlined above would justify dismissal of such jurisdiction as a matter of discretion, as Judge Goettel thought. Cf. *United Mine Workers v. Gibbs*, supra, 383 U.S. at 726, 86 S.Ct. 1130.[18] Finally, we are told that our decision here does not leave appellants without a remedy[19]—indeed, we are comforted in reaching our conclusion since suits for malicious prosecution, libel or slander, which are based on state law, are best decided by the state courts.

Judgment affirmed.

---

17. The counterclaim is based on state law and no diversity of citizenship exists between the parties, see note 1 supra.

18. A logical concomitant of extending ancillary jurisdiction to permissive counterclaims is the express recognition of district court discretion to decline that jurisdiction, see Comment, Pendent and Ancillary Jurisdiction, supra note 10,

at 1285–87; 3 Moore's Federal Practice ¶ 13.-19[1], at 13–486 to –488.

19. Upon questioning at oral argument, counsel for appellants informed us that there was no problem with the state statute of limitations because it was tolled during the pendency of the federal action. See N.Y.C.P.L.R. § 203(d).