AEROQUIP CORPORATION, Plaintiff,

v.

Howard CHUNN; Defco, Inc.; Air-Dro, et al., Defendants.

No. 80–M–0186.

United States District Court,
N. D. Alabama, N. D.

Dec. 1, 1981.

**1260**

Charles Robinson, Gilbert E. Johnston, Barton, Proctor, Swedlaw & Naff Birmingham, Ala., for plaintiff.

Albert Brewer, Decatur, Ala., for defendants.

## MEMORANDUM OPINION

McFADDEN, Chief Judge.

This cause is before this court on motion of the plaintiff to enjoin the defendants from prosecuting several state court actions against the plaintiff. This lawsuit originally involved claims for unfair trade practices, infringement of trade secrets, breach of fiduciary duty, and corporate raiding. No counterclaims were brought. The case was settled during trial. Pursuant to the settlement agreement, the court permanently enjoined the defendants from using the plaintiff's design drawings, specifications, and blue prints, and further enjoined the defendants from representing that its cylinders are interchangeable with those of the plaintiff. Since then, defendants Chunn, Defco, and Air-Dro have each instituted actions in the Circuit Court of Morgan County, Alabama. These suits all have allegations that Aeroquip and its employees have falsely and maliciously charged that Chunn and the other defendants had stolen Aeroquip's prints and drawings. These allegations of defamation involve a series of statements which occurred before, during, and after the pendency of this suit. Additionally, it is alleged that on November 26, 1980, Aeroquip without probable cause instituted a contempt proceeding against Chunn et al., which ended "favorably to" Chunn et al. This contempt motion was overruled as moot by agreement of the parties.

Plaintiff contends that because the claims filed in state court were compulsory counterclaims in the federal action under Rule 13(a) of the Federal Rules of Civil Procedure, they would be barred in the subsequent state action. On this basis the plaintiff asks that the state action be enjoined to protect the consent judgment in this case under the exception to 28 U.S.C. § 2283, which generally bars federal stays of state proceedings but allows a federal court to enter injunctions "to protect or effectuate its judgments."

█ The first problem with this argument is that such an injunction would force the application of the federal rules of civil procedure in the state action by foreclosing the action for the sole reason that it is barred by Rule 13(a). This would go beyond the statutory limitations placed upon the rules by the Rules Enabling Act, 28 U.S.C. § 2072. 6 Wright and Miller, *Federal Practice and Procedure* § 1417 at 101 (1971). For this reason alone the injunction would be improper. Although the Alabama court could use its equivalent rule to bar an action that it considered a compulsory counterclaim in a prior federal action, that should be a problem of the state court applying its own rule, and not one for this court.

█ Even if this court had the power to enjoin the state action, this case is not one in which Rule 13(a) would act as a bar to all the claims since some of them at least ap-

pear not to be compulsory counterclaims in this federal action.

The Fifth Circuit applies the logical relation test, *Revere Copper and Brass Incorporated v. Aetna Casualty*, 426 F.2d 709, 714 (5th Cir. 1970), and it may be assumed that the new Eleventh Circuit will also. In applying the test in *Diamond v. Terminal Railway Alabama State Docks*, 421 F.2d 228, 236 (5th Cir. 1970), *cert. denied* 397 U.S. 1079, 90 S.Ct. 1531, 25 L.Ed.2d 815 (1970), the court quoted the Third Circuit:

> [A] counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. When multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and economy require that the counterclaimant be permitted to maintain his cause of action. Indeed the doctrine of *res judicata* compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently. *Great Lakes Rubber Corporation v. Herbert Cooper Co.*, 3 Cir., 1961, 286 F.2d 631, 634.

*Diamond v. Terminal Railway Alabama State Docks*, 421 F.2d at 236.

In a case involving a very similar relationship between a claim and counterclaim, the Second Circuit held that the counterclaim was *not* logically related. *Harris v. Steinem*, 571 F.2d 119 (2nd Cir. 1978). The plaintiff Harris and the defendants were the founders of a magazine. Plaintiff sold a substantial portion of her stock back to the magazine. The magazine later sold a large block of stock to a prominent company thereby enhancing the value of the stock. Plaintiff claimed that defendants had violated the securities law when her stock had been purchased some time before. It was claimed that defendants had failed to disclose information relating to the ongoing negotiations with an outside investor.

These undisclosed transactions were alleged to have increased the value of plaintiff's stock that was sold. The defendants counterclaimed for libel based on the complaint, which was alleged to have been brought maliciously, and on several subsequent statements of Harris concerning her lawsuit.

The plaintiff's claim was dismissed for failure to appear at a deposition. Thereafter, the trial court dismissed the defendants' counterclaims without prejudice. The trial court held the counterclaims to be compulsory, but held that in light of the early pre-trial dismissal of the original action, the counterclaims were due to be dismissed without prejudice. This was on the basis that the court had discretion to decline ancillary jurisdiction. The Court of Appeals affirmed the dismissal, but held that the counterclaims were permissive. The Court applied the "logical relationship" test and stated at pages 123–124:

> Harris claimed that her sale of stock to appellants in 1972 was fraudulently induced under both state and federal law. Such allegations focus on the details of the negotiations and the material financial information about Ms. Magazine known to the individual appellants and not disclosed to Harris at the time of the transaction complained of. In contrast, appellants' counterclaim was based on the filing of the complaint in 1975 and the "even more remote" subsequent publicity surrounding the suit.... While it is true that Harris's success on the main claim would probably have defeated the counterclaim, essential issues in the counterclaim might well have included (1) whether appellants were "public figures" ..., (2) if so, whether Harris's alleged libel was made with her "knowledge that it was false or with reckless disregard of whether it was false or not," ... and if appellants were not public figures, whether such publications were made in a "grossly irresponsible manner," ... and (3) whether the publications were privileged as either court pleadings, ..., or as accurate reports of judicial proceedings, .... It is thus apparent that the logical

relationship between Harris's complaint and appellants' counterclaims is at best attenuated.

In addition, Judge Goettel correctly observed that "the counterclaim, while artfully drafted, in essence is a claim for malicious prosecution" and it is well settled that

> [a] claim *in the nature of malicious prosecution*, which arises out of the bringing of the main action, generally cannot be asserted either as a compulsory or a permissive counterclaim, since such a claim is premature prior to the determination of the main action. (Emphasis supplied by the appellate court). (Citations omitted).

The case against holding these counterclaims to be compulsory is stronger than in *Harris*. In *Harris*, the question was simply whether the court would hear a counterclaim that had been brought and not whether ones that had not been brought would be lost, as in the claim before this court. The consequences of finding such a counterclaim compulsory weigh toward a narrow construction of the rule in such a case. 6 Wright and Miller, *Federal Practice and Procedure* § 1410 at 54 (1971).

For these reasons, the injunction in this case should not issue. This is not to say that certain issues decided in the federal case should not work to bar relitigation of similar factual issues presented to the state court. For instance, the state court may find that, in entering into the consent order and injunction, the plaintiffs in the state action estopped themselves from relitigating the truth of facts necessary to that order, facts that on the face of the state pleadings seem identical to the libels that are the basis of the state actions. However, these are matters for the state court to resolve, and not to be resolved by an injunction from this court.