**John G. HOWELL, Jr., Plaintiff,**

**v.**

**TOWN OF FAIRFIELD, Robert T. Harriss, Jr., Robert Nolfi and Thomas Mrozek, Defendants.**

**Civ. No. B–87–710 (WWE).**

United States District Court, D. Connecticut.

Dec. 19, 1988.

Kenneth A. Votre, Jacobs, Votre & Jacobs, New Haven, Conn., for plaintiff.

Richard M. Solazzo, Durant, Sabanosh, Nichols & Houston, Bridgeport, Conn., for defendants.

## ORDER

EGINTON, District Judge.

After review and absent objection, the opinion of the Magistrate is hereby ADOPTED, RATIFIED and AFFIRMED.

### RULING ON PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' AMENDED COUNTERCLAIM

ARTHUR H. LATIMER, United States Magistrate.

The amended defamation counterclaim currently at issue was brought in response to the filing of plaintiff's instant civil rights complaint. Invoking federal civil rights provisions, cf. 42 U.S.C. § 1983, as well as

pendent state law theories of liability, plaintiff has alleged that on July 4, 1986 the defendant Fairfield, Connecticut police officers assaulted, arrested, imprisoned, and prosecuted him without adequate justification causing him public humiliation, physical injury, and medical and legal expense. Plaintiff also asserts purported claims against the defendant Town of Fairfield for allowing a pattern and practice of harassment to be conducted by the town's police force against him. Defendants' amended answer includes several affirmative defenses as well as an attempted counterclaim for defamation. In the latter regard, the defendant officers allege that subsequent to the plaintiff's arrest, plaintiff slandered the defendant officers on one or more occasions, causing injury to their professional reputations. The pleading is vaguely worded, and does not clearly specify when or how many times the alleged slander occurred, although defense counsel has represented that at least one supposed slander took place before plaintiff instituted his civil rights suit. Plaintiff has correctly moved to dismiss that purported counterclaim as merely permissive, cf. Rule 13, Fed.R.Civ.P., and lacking requisite independent jurisdictional foundation, cf. *Harris v. Steinem*, 571 F.2d 119 (2 Cir.1978).

■ The dispositive question of ancillary jurisdiction presented is whether the state law defamation counterclaim is properly regarded "compulsory", Rule 13(a), Fed.R.Civ.P., in the context of this federal civil rights suit, for in that event no separate jurisdictional ground would be necessary for exercise of this court's ancillary claim jurisdiction, see, e.g., *Harris v. Steinem*, supra at 121–22. Rule 13(a) speaks generally of a "compulsory" counterclaim as involving any that "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim". In turn, the Second Circuit tests such linkage by examining the "logical relationship" between claim and counterclaim, a "flexible approach ... [which] attempts to analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the

issues be resolved in one lawsuit", *Harris, supra* at 123. Unsurprisingly, those very same policy considerations of judicial economy and fairness are the touchstone for the conceptually distinct question of appropriate exercise of pendent jurisdiction over state law claims tied to a federal cause of action when there is a sufficiently common factual nexus giving the federal court discretionary power to resolve the whole complaint. See, e.g., *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Those controlling policy considerations serve to identify in a practical manner, and not by abstract logic, the appropriate limits to a generally liberal "compulsory" counterclaim classification of possible opposing claims in each particular case.

In *Harris v. Steinem, supra,* our court of appeals ruled that a defamation counterclaim based on the filing of the complaint itself, plus subsequent libel, is correctly dismissed as merely permissive and not compulsory, see *id.* at 124–25. The late Judge Blumenfeld noted those particular facts as distinguishable, see *Appletree v. City of Hartford*, 555 F.Supp. 224, n. 3 at 230 (D.Conn.1983), in once entertaining an officer's defamation counterclaim as "compulsory" in a civil rights suit when the defendant's claim seemed "based on a libelous publication contemporaneous with the transaction complained of in the original dispute", *id.* at 230, see also *Harris, supra,* n. 16 at 124, but a second reading of *Harris* discloses a deliberately more inclusive note of warning. First, *Harris* expressly pointed to the circuit's own prior holding in *O'Connell v. Erie Lackawanna Railroad Co.*, 391 F.2d 156, 163 (2 Cir.1968), *vacated as moot*, 395 U.S. 210, 89 S.Ct. 1767, 23 L.Ed.2d 213 (1969), that a counterclaim for "libel based on two letters which unflatteringly characterized a union shop agreement and which were disseminated *before* and at the time of the complaint was a permissive counterclaim in an action by a competing union to declare the union shop agreement invalid under the federal labor laws", *Harris v. Steinem, supra* at 124–25 (emphasis in original). Second, *Harris* expressly en-

dorsed "postponement of suits that will ordinarily not arise if plaintiff wins the main action" and cautioned against the obvious potential for tactical abuse in counterclaim practice, *id.* at 125, a matter of general significance even if the immediate concern in *Harris* was an apparent defense effort to cloak malicious prosecution charges in the guise of a libel claim, see *id.* at 124–25.

Assuming *Harris v. Steinem* is not directly and wholly dispositive in this instance, the underlying policy considerations of true judicial economy and genuine fairness still plainly counsel against regarding the vague instant counterclaim as compulsory. Beyond and apart from presumed common questions of truth and falsity are such distinct and particular defamation issues, foreign to civil rights suit, as a host of potential questions of publication, privilege, the defamatory nature of communications, their character as statements of fact or of opinion, liability standards turning upon those statements' content and context, counterclaimants' status as public officials, and the like. The litigation problems posed by injecting such state law elements into a federal civil rights claim controversy are obvious and substantial.

Some few years after *Appletree*, interestingly enough, in the analogous context of weighing pendent jurisdiction Judge Blumenfeld came to recognize—and indeed to articulate forcefully—the dangers of "complication and confusion", *Esposito v. Buonome*, 647 F.Supp. 580, 584 (D.Conn.1986), in adding state law questions to a core federal civil rights dispute. As already noted, the ultimately determining policy inquiry of both pendent claim and ancillary counterclaim jurisdiction into where real judicial economy and fairness lie is similar, cf. *Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. at 1139. As stressed long ago by Judge Newman, moreover, the ultimate outcome in terms of appropriate scope of a federal lawsuit must be consistent whether one is considering pendent jurisdiction's exercise or the labeling of a counterclaim as "compulsory", see, e.g., *Ball v. Connecticut Bank & Trust Co.,* 404 F.Supp. 1 (D.Conn. 1975). The evident risks in this civil rights

case of complication and confusion, whether intended by defendants or not, mean that the purported state law defamation counterclaim need not and should not be deemed "compulsory", Rule 13(a), *supra.*

For the reasons set forth above, plaintiff's motion to dismiss the challenged defamation counterclaim is granted on the ground of lack of federal subject matter jurisdiction over that claim as merely "permissive", Rule 13(b), Fed.R.Civ.P., with this ruling subject of course to review on prompt objection, cf. 28 U.S.C. § 636(b), Rule 2, D.Conn.Rules for U.S. Magistrates. Correspondingly, defendants may consider moving for dismissal of the civil rights complaint's pendent state law claims to the extent those present risks of complicating and confusing the federal case.

Dated at New Haven, Connecticut, this 30th day of November, 1988.