937 F.2d 738
 19 Fed.R.Serv.3d 1389
 Jonathan Cory SCOTT, Plaintiff-Appellant,
v.
LONG ISLAND SAVINGS BANK, FSB, Long Island Savings Bank of
Centereach, FSB, Conway and Ryan, P.C., Richard P. Goodwin
Associates, Inc., Fidelity Funding Company and Juliette A.
Kinsella, Clerk of Suffolk County, New York, Defendants-Appellees.
LONG ISLAND SAVINGS BANK, FSB, Long Island Savings Bank of
Centereach, FSB, Conway and Ryan, P.C., Richard P. Goodwin
Associates, Inc., and Fidelity Funding Company, Defendants
and Third-Party Plaintiffs, Appellees,
v.
Shari SCOTT, Third-Party Defendant, Appellant,
and
Richard P. Goodwin, Irene Goodwin, Helen Gill, David Wharton
and Marion Kalkau, Additional Defendants on Counterclaim.
 Nos. 205, 206, Dockets 90-7129, 90-7179.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 10, 1990.
Decided June 21, 1991.
 
 Ronald Podolsky, New York City, for plaintiff-appellant.
 Matthew Dollinger, Carle Place, N.Y. (Leslie A. Foodim, Dollinger, Gonski, Grossman, Permut & Hirschorn, of counsel), for defendants-appellees.
 Harold Spivack, Great Neck, N.Y., for third-party defendant, appellant.
 Before MAHONEY and WALKER, Circuit Judges, and LEVAL, District Judge.*
 MAHONEY, Circuit Judge:
 
 
 1
 This is an appeal from an order of the United States District Court for the Eastern District of New York, I. Leo Glasser, Judge, entered January 4, 1990 following a bench trial. That order denied plaintiff Jonathan Cory Scott ("Jonathan") (1) a declaratory judgment that defendant Long Island Savings Bank[1] violated the Truth in Lending Act ("TILA"), 15 U.S.C. Sec. 1601 (1988) et seq., by failing to provide him with certain disclosures and notices of a right to rescind a second mortgage to which he claims entitlement pursuant to 15 U.S.C. Sec. 1635(a) (1988) and implementing regulations, and (2) a consequent rescission of that mortgage. The order also ruled that, notwithstanding Jonathan's lack of consent and the prior expiration of his custody arrangement, the bank had properly relied upon the representation of Shari Scott ("Shari"), Jonathan's stepmother, that she was Jonathan's authorized custodian so that the bank had obtained a valid mortgage over Jonathan's interest. Finally, the order also dismissed as moot a third-party complaint against Shari and Shari's counterclaims. The district court had previously denied Shari's motions: (1) to add counterclaims and counterclaim defendants; (2) to dismiss the complaint; and (3) for summary judgment. Jonathan and Shari appeal from these determinations.
 
 
 2
 We affirm in part and vacate in part.
 
 Background
 
 3
 On August 10, 1984, Shari, as mortgagor, granted LISB a $90,000 second mortgage secured by a one family home at 12 Glen Ridge Avenue, Stony Brook, New York (the "Property"). Title to the Property was held by "Shari Scott as to a one-third interest[;] Shari Scott as successor custodian for Jonathan Cory Scott and Peter Allan Scott under the New York Gift to Minors Act as to a two-thirds interest." Shari, the stepmother of Jonathan and his brother, Peter Allan Scott, executed the mortgage in her individual and custodial capacities.
 
 
 4
 The issue in this case arises from the fact that Jonathan reached twenty-one years of age two days before the closing.[2] The requirements of section 1635(a) have concededly been satisfied as to Shari, and there is no claim that she has any independent right to rescind the mortgage. Jonathan claims, however, that in view of his majority status at the time of closing, he has independent entitlements under section 1635(a).
 
 
 5
 On January 16, 1985, Shari requested that LISB cancel the mortgage and offered to return the loan proceeds net of her expenses and without interest. LISB denied this request, insisting that it be made whole. On July 2, 1985, Jonathan exercised his claimed right to rescind the mortgage pursuant to the TILA. The Scotts have never made any payments of principal or interest on the second mortgage, and LISB has instituted foreclosure proceedings in the Supreme Court of the State of New York, Suffolk County.
 
 
 6
 Jonathan commenced this action in August 1985 against LISB, Fidelity Funding Co. ("Fidelity"), a predecessor mortgagee under the second mortgage and affiliate of Richard P. Goodwin Associates, Inc. ("Goodwin"), Conway & Ryan, P.C., LISB's closing attorneys, and Goodwin, the mortgage broker. Jonathan claimed that the TILA entitled him to rescind the mortgage, and that Shari was never authorized to act in his behalf with respect thereto. The defendants filed a third-party complaint against Shari for indemnity based upon her alleged fraud in representing to LISB that she was empowered to bind Jonathan. Shari moved to dismiss, and the motion was denied.
 
 
 7
 Shari then answered and asserted counterclaims alleging fraud and intentional infliction of emotional distress against Goodwin, Fidelity, and various employees, officers, and agents of Goodwin and Fidelity. The district court thereafter denied a motion by Shari to amend her answer to add counterclaims alleging negligence against Conway & Ryan, P.C., two title companies involved in the mortgage closing, and two related individuals. The district court also subsequently denied Shari's motion for summary judgment.
 
 
 8
 The district court held the third-party action in abeyance pending disposition of the main action between Jonathan and LISB. After trial, the court issued a memorandum and order ruling for the defendants in the main action. The court concluded that Jonathan was not entitled to the protections of section 1635(a) because the Property was not his "principal dwelling" within the meaning of that provision.
 
 
 9
 The court went on to address Shari's representations regarding ownership of the Property in light of N.Y. Est. Powers & Trust Law Sec. 7-4.6 (McKinney 1967 & Supp.1991),[3] concluding that LISB "properly relied on Shari Scott's representation that she was the custodian of Jonathan Cory Scott and it may proceed to foreclose on the mortgage that it extended to Shari Scott." The court also ruled that it would "not address the third-party action as resolution of the main action effectively moots the issues raised there."
 
 
 10
 Jonathan and Shari then took this appeal.
 
 Discussion
 
 11
 A. Jonathan's Claim.
 
 
 12
 15 U.S.C. Sec. 1635(a) (1988) governs decision in this case, and provides:
 
 
 13
 Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board [of Governors of the Federal Reserve System], of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.
 
 
 14
 Id. (emphasis added).
 
 
 15
 The district court ruled that the Property was not Jonathan's "principal dwelling" within the meaning of section 1635(a), based upon both the facts of record and the court's assessment of the credibility of the witnesses. We must affirm this finding unless we deem it "clearly erroneous," and must accord "due regard ... to the opportunity of the trial court to judge of the credibility of the witnesses." Fed.R.Civ.P. 52(a). We find no basis for reversal.
 
 
 16
 Jonathan lived at the Property from 1968, when he was five years old, to 1971. He thereafter lived at various other locations in Suffolk County with his natural mother until she relocated to Texas in 1976. Commencing that year, he lived with his father and Shari at 26 Hitherbrook Road in St. James, New York.
 
 
 17
 Beginning in 1975, the Property was leased to tenants. They moved out in June 1984 because of inability to pay the rent, but left most of their furniture there. Jonathan graduated from college in 1984, and lived at the Property beginning sometime after July 4, 1984. He thus lived there on August 10, 1984, the closing date for the second mortgage transaction. He began Touro Law School that fall, and moved out of the Property around Labor Day, 1984.
 
 
 18
 During that summer, Jonathan received his mail at a post office box in St. James. The telephone and electric services for the Property were not registered in his name. Rather, they were registered in the former tenant's name, and subsequently in Shari's name. His only possessions at the Property were a single bed, small dresser, radio, clock, folding table, and four chairs. These possessions occupied only one room, while the former tenant's furniture remained in the rest of the house. From September through December 1984, the former tenant resumed residence at the Property rent-free. Jonathan never made any payment on the first or second mortgage on the Property. Payments on the first mortgage were made from rental receipts on the property; when no such receipts were available, Shari made the payments.
 
 
 19
 We have been unable to find any case addressing the issue whether a particular residence was a borrower's "principal dwelling" within the meaning of section 1635(a). However, the Board of Governors of the Federal Reserve System has issued Regulation Z to implement the TILA, see 12 C.F.R. Sec. 226.1 (1991) et seq., and id. Sec. 226.23(a) reiterates the "principal dwelling" requirement of section 1635(a). An official staff interpretation of this provision by the Board's Division of Consumer and Community Affairs, see 12 C.F.R. Pt. 226, App. C (1991), states: "A consumer can only have one principal dwelling at a time. A vacation or other second home would not be a principal dwelling." See 12 C.F.R. Pt. 226, Supp. I, at 392 (1991). Especially in view of the deference that we owe to the district court's findings of fact and credibility assessments, we conclude that given the very temporary nature of Jonathan's 1984 summer sojourn at the Property, this was at best his "vacation or second home," not his section 1635(a) "principal dwelling."
 
 
 20
 Once the district court reached this conclusion, it noted that Jonathan also sought "a declaratory judgment forfeiting [LISB's] security interest in the premises at 12 Glen Ridge Avenue," and then determined that "[a]s the [TILA] is not applicable to this case, the provision which appears dispositive is Section 7-4.6 of the Estates Powers & Trusts Law." The district court concluded that LISB "relied on the veracity of Shari Scott's representation that she was the custodian of Jonathan Scott and, in so doing, it is protected by the provisions of EPTL Sec. 7-4.6.... [LISB] may proceed to foreclose on the mortgage that it extended to Shari Scott."
 
 
 21
 In ruling that LISB was entitled under EPTL Sec. 7-4.6 to rely on Shari's representation that she was acting as Jonathan's custodian, the district court adjudicated the question whether the security interest acquired by LISB covered Jonathan's one-third share. Our problem with this adjudication is that the issue had not been placed in controversy by the pleadings.
 
 
 22
 The amended complaint included only a single cause of action. It asserted subject matter jurisdiction under 28 U.S.C. Sec. 1331 (1988) by virtue of relief sought under TILA. The relief sought was the rescission of the mortgage in its entirety for failure of the lender to advise the mortgagor of a residence of the right to cancel, as required by TILA, 15 U.S.C. Sec. 1635(a) (1988), and 12 C.F.R. Sec. 226.23 (1991).
 
 
 23
 Had the complaint sought, in addition, to set aside that portion of the mortgage covering Jonathan's one-third share by reason of the absence of Jonathan's consent, this would have raised a claim under New York law which would not have come within the federal court's jurisdiction except by exercise of pendent jurisdiction, ancillary to the TILA claim. Although one of the recitations of the complaint mentioned Jonathan's lack of consent to the mortgage, no such second cause of action was asserted; nor did any of the several paragraphs specifying the relief sought include relief freeing Jonathan's share from the mortgage on this basis.
 
 
 24
 The same issue could of course have been asserted by LISB in a bank counterclaim seeking declaratory judgment that its mortgage validly covered Jonathan's share, notwithstanding his absence of consent, by reason of the bank's reliance on Shari's assertion of custody. LISB's answer, however, asserted no such counterclaim. (LISB's third-party claim against Shari included reference to the bank's right-to-rely under the EPTL. But that cause of action, to which Jonathan in any event was not a party, was severed pending resolution of Jonathan's action against LISB.) It is true that LISB's proposed findings of fact and conclusions of law sought a declaration that it had lawfully relied upon Shari's representation of custody. It is questionable, however, whether such an assertion in proposed findings validly introduces an unpleaded cause into a litigation.
 
 
 25
 If it were clear that the parties believed they were litigating the ancillary issue, we might well allow the judgment to stand notwithstanding the objection that it had not been raised by the pleadings, especially if the implicated issues of state law were not controversial and if retrial would impose a substantial duplicative burden and expense. Here, however, none of these conditions is present. LISB has instituted a foreclosure action in state court where these questions may appropriately be addressed. Further, the state law issue as to the meaning of section 7-4.6 is far from clear because that provision has rarely been interpreted by New York courts. Were a federal court deciding whether to assert pendent jurisdiction over a claim requiring interpretation of such a statute, its obscurity and the paucity of pertinent state judicial precedent would argue in favor of deferring in favor of the state courts.[4] See L.A. Draper & Son v. Wheelabrator-Frye, Inc., 735 F.2d 414, 428 (11th Cir.1984). These considerations lead us to vacate the judgment of the district court insofar as it resolves a claim that was not pleaded, leaving the issue of LISB's reliance upon Shari's representation of custody to be determined by the state court in LISB's action to foreclose its mortgage.
 
 
 26
 B. Third-Party Counterclaims.
 
 
 27
 Shari contends that whether or not LISB's third-party claim for indemnity was properly regarded as moot after the determination adverse to Jonathan's claim against LISB, the district court improperly declined to address her counterclaim. We conclude, however, that the district court acted well within its discretion in dismissing Shari's counterclaims.
 
 
 28
 As we stated in Harris v. Steinem, 571 F.2d 119 (2d Cir.1978):
 
 
 29
 With certain exceptions, [Fed.R.Civ.P.] 13(a) requires a litigant to "state as a counterclaim any claim ... if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim...." Such counterclaims are denominated compulsory, and no independent basis of federal jurisdiction is needed for the court to adjudicate the ancillary issues thus raised, if the main claim itself presents a colorable federal issue. Moreover, a compulsory counterclaim, unless specifically excepted, must be pleaded or be forever barred.
 
 
 30
 Id. at 121-22 (footnotes and citations omitted).
 
 
 31
 It would seem likely that Shari's counterclaims in this case are properly considered compulsory. See 6 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure Sec. 1410, at 78 (2d ed. 1990) ("whenever any logical relationship between the claims can be found, the courts seem willing to apply Rule 13(a)"). Nonetheless, compulsory counterclaims may be dismissed where, as here, the initial claim giving rise to federal jurisdiction is dismissed.
 
 
 32
 Harris v. Steinem did not reach this question, concluding that the counterclaims in that case were permissive and there was accordingly no basis for federal jurisdiction after the primary claim was dismissed. See 571 F.2d at 123-25. Numerous cases have addressed the issue, however, and ruled that compulsory counterclaims are subject to dismissal. See, e.g., National Research Bureau, Inc. v. Bartholomew, 482 F.2d 386, 388 (3d Cir.1973) (per curiam) (dictum); Faygo Beverages, Inc. v. Pioneer Trucking, Inc., 585 F.Supp. 251, 255-56 (D.Del.1984); Mirkin, Barre, Saltzstein, Gordon, Hermann & Kreisberg, P.C. v. Noto, 94 F.R.D. 184, 188-90 (E.D.N.Y.1982); Stewart v. Dollar Federal Savings and Loan Ass'n, 523 F.Supp. 218, 224-25 (S.D.Ohio 1981) (dictum); Great Horizons Dev. Corp. v. Massachusetts Mut. Life Ins. Co., 457 F.Supp. 1066, 1081-82 (N.D.Ind.1978), aff'd mem., 601 F.2d 596 (7th Cir.1979); Wetherington v. Phillips, 380 F.Supp. 426, 429 (E.D.N.C.1974) (dictum), aff'd mem., 526 F.2d 591 (4th Cir.1975); United States ex rel. T. Square Equipment Corp. v. Gregor J. Schaefer Sons, Inc., 272 F.Supp. 962, 964-65 (E.D.N.Y.1967).
 
 
 33
 Given the insubstantiality of the counterclaims asserted by Shari, the district court did not abuse its discretion by dismissing them.[5] We note, further, that Shari may probably pursue these claims in state court, if so disposed. See Dyer v. Cahan, 150 A.D.2d 172, 540 N.Y.S.2d 785 (1st Dep't 1989) (per curiam); Gross v. Newberger, Loeb & Co., 85 A.D.2d 709, 445 N.Y.S.2d 830 (2d Dep't 1981) (per curiam); see also Harris v. Steinem, 571 F.2d at 125 & n. 19.
 
 Conclusion
 
 34
 We affirm the order of the district court insofar as it dismissed Jonathan's claim, LISB's third-party claims and Shari's counterclaims. We vacate that order insofar as it ruled upon LISB's rights under N.Y. Est. Powers & Trusts Law Sec. 7-4.6 (McKinney 1967 & Supp.1991) or LISB's right to foreclose on its mortgage on the Property.
 
 
 
 *
 The Hon. Pierre N. Leval, Judge of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 Long Island Savings Bank, FSB, was a predecessor mortgagee of the second mortgage that is the subject of this litigation, and was succeeded in that capacity by Long Island Savings Bank of Centereach, FSB. Both are hereinafter referred to as "LISB."
 
 
 [2]
 Although the current age of majority under the New York Uniform Gifts to Minors Act is eighteen, see N.Y. Est. Powers & Trust Law Sec. 7-4.1(a) and (m) (McKinney Supp.1991), this resulted from a statutory amendment applicable only to gifts made after January 1, 1980. See N.Y.Laws 1979, ch. 462, Sec. 5. All conveyances relevant herein occurred prior to that date, so the age of majority for purposes of this case is twenty-one
 
 
 [3]
 Section 7-4.6 provides in pertinent part:
 No issuer, transfer agent, bank, life insurance company, broker or other person or financial institution acting on the instructions of or otherwise dealing with any person purporting to act as a donor or in the capacity of a custodian is responsible for determining whether the person designated as custodian by the purported donor or by the custodian or purporting to act as a custodian has been duly designated or whether any purchase, sale or transfer to or by or any other act of any person purporting to act in the capacity of custodian is in accordance with or authorized by this part, or is obliged to inquire into the validity or propriety under this part of any instrument or instructions executed or given by a person purporting to act as a donor or in the capacity of a custodian, or is bound to see to the application by any person purporting to act in the capacity of a custodian of any money or other property paid or delivered to him.
 
 
 [4]
 The wisdom of this course was explicitly recognized by Congress in its recent codification of the principles of pendent and ancillary jurisdiction in the Judicial Improvements Act of 1990, Pub.L. No. 101-650, 104 Stat. 5113. The section providing for what is termed "supplemental jurisdiction" states as one of the reasons for declining to exercise such jurisdiction that "the claim raises a novel or complex issue of State law." 28 U.S.C. Sec. 1367(c)(1) (applies only to civil actions commenced on or after December 1, 1990.)
 
 
 [5]
 Under recently enacted 28 U.S.C. Sec. 1367(c)(3), which is not applicable here, see supra note 4, a district court is expressly authorized to decline to exercise supplemental jurisdiction over a claim where the court "has dismissed all claims over which it has original jurisdiction."